[No. 14252-0-II.    Division Two.    February 4, 1993.]

THE STATE OF WASHINGTON, Respondent, v. T.R.
KISOR, Appellant.

*Robert A. Lewis* and *Knapp, O'Dell, Lewis & Hagensen,* for appellant (appointed counsel for appeal).

*Arthur D. Curtis, Prosecuting Attorney,* and *Michael C. Kinnie, Deputy,* for respondent.

ALEXANDER, C.J. — T.R. Kisor, who was convicted of burglary in the first degree, two counts of theft in the second degree, and harming a police dog, appeals his conviction for harming a police dog. He contends that the evidence was insufficient to support the jury's verdict. He also assigns error to the trial court's instruction on "knowledge" and to its failure to give his proposed instruction on the same subject. He asserts, additionally, that the trial court erred in limiting the restitution hearing on that conviction to affidavits and in basing the amount of restitution on the State's

affidavit. Kisor also appeals his sentence on the first degree burglary conviction, contending that the trial court erred in calculating the standard range for the offense. In addition, he appeals the trial court's order sentencing him to a term of 1 year's community placement. We affirm the conviction for harming a police dog but reverse the restitution order and remand for a restitution hearing. We affirm the sentence for burglary but reverse the order for community placement.

On May 8, 1990, Vancouver Police Officer Michael Taylor was driving from his workplace to his home in the Vancouver area. As he passed Larson's Country Market on Fourth Plain Road, he saw what he believed was his Chevrolet Blazer parked in front of the store. As Taylor slowed down to investigate, a person, later identified as T.R. Kisor, sped away in the Blazer in an apparent effort to flee. Taylor gave chase until Kisor abandoned the vehicle on a side road and took to the woods. The chase ended when Kisor fired a gun at Taylor and the owner of the land, Martin Wolf, and called out to them to leave him alone. Taylor then phoned the police from a nearby home.

Officer Thomas Mitchum responded to Taylor's call, bringing a tracking dog with him by the name of "Lucky". Mitchum released Lucky's leash, allowing Lucky to work "off lead". Lucky was wearing a police harness which contained several reflectorized straps and a neck bell. Lucky appeared to find Kisor's scent and raced into the woods. About 10 minutes later Mitchum heard a gunshot. Lucky was later found shot dead. When Taylor returned to his residence he found that his house had been burglarized. Two guns and the Chevrolet Blazer were missing. Kisor was subsequently apprehended by Officer Douglas Ray, but only after a stand-off in which Kisor and Ray pointed loaded guns at each other.

A Clark County sheriff took Kisor's statement after his arrest. Kisor told the deputy that he saw something "out of the corner of his eye" come from behind a tree. Kisor described

it to the deputy "as a blur", and said he turned and shot one time and "saw he had shot a dog."

Kisor was charged with two counts of attempted murder in the first degree, one count of burglary in the first degree, two counts of theft in the second degree (guns and Blazer), and one count of harming a police dog. The case proceeded to trial, at the conclusion of which the trial court denied Kisor's motion to dismiss the charge of harming a police dog for the State's alleged failure to prove that Kisor harmed a "police dog". Kisor also excepted to the trial court's jury instruction on "knowledge" and to its failure to give his proposed instruction on the same subject. The jury found Kisor not guilty of both counts of attempted murder and guilty on the charges of first degree burglary, two counts of theft, and harming a police dog.

In determining Kisor's offender score the trial court merged the theft of the guns with the burglary. It declined, however, to merge the theft of the Blazer with the burglary, reasoning that this theft did not "encompass the same criminal conduct" as the burglary. As a result of the trial court's failure to merge the burglary and the theft of the Blazer, Kisor's offender score was computed to be 7. A maximum standard range sentence of 89 months[1] was imposed for the burglary and 18 months was added to the sentence because Kisor was armed with a deadly weapon during the commission of the burglary. Kisor was also sentenced to 14 months for each theft and 12 months for harming a police dog. All of the sentences were ordered to run concurrently. The trial court also sentenced Kisor to a 1-year term of community placement.

At sentencing, Kisor requested a restitution hearing. The trial court conducted the hearing but, over Kisor's objection, it limited the submissions to affidavits. The only affidavit submitted was that of Aadne Benestad, risk manager for

---

[1] If the theft of the Blazer and the burglary had merged, Kisor's offender score would have been 6 and the standard range sentence would have been 57 to 75 months.

Clark County, valuing the County's loss of Lucky at $17,380.[2] After considering the affidavit, the sentencing judge ordered Kisor to pay $17,380 in restitution.

### SUFFICIENCY OF THE EVIDENCE

Kisor assigns error to the trial court's denial of his motion, made at the close of the State's case, to dismiss the charge of harming a police dog for the State's failure to produce prima facie evidence of that crime. A close reading of appellant's brief indicates, however, that he has abandoned that assignment of error[3] and, instead, challenges the sufficiency of the evidence to support the jury's finding of guilt as to the charge.

■ In reviewing the sufficiency of the evidence to support a guilty verdict in a criminal case, the appellate court views the evidence in the light most favorable to the State and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980).

The crime of harming a police dog is defined in RCW 9A-.76.200 as follows:

> **Harming a police dog.** (1) A person is guilty of harming a police dog if he maliciously injures, disables, shoots, or kills by

---

[2]Benestad's affidavit provided, in pertinent part, as follows:
"The cost of replacement of the police dog is as follows:

| | | |
|---|---|---:|
| "1. | Replacement of animal | $3,500 |
| | I checked with Tacoma Police Department and with Spokane Canine Training Units. | |
| "2. | Room and Board | 5,880 |
| | 12 weeks motel @ $45/day | 3,780 |
| | 12 weeks meals @ $25/day | 2,100 |
| | 12 weeks training is normal | |
| "3. | Deputy wages for 12 weeks | 8,000 |
| | TOTAL | $17,380 |

"12 weeks training is usual and customary for police dog handler training. See attached copy of West Virginia Canine College advertisement."

[3]Kisor waived his right to challenge the trial court's denial of his motion to dismiss because he presented evidence on his own behalf during his case in chief. *See Carle v. McChord Credit Union*, 65 Wn. App. 93, 97 n.3, 827 P.2d 1070 (1992).

any means *any dog that the person knows or has reason to know to be a police dog*, as defined in RCW 4.24.410, whether or not the dog is actually engaged in police work at the time of the injury.

(Italics ours.) In order to sustain a conviction for the offense, the State had to prove that Kisor knew or had reason to know that Lucky was a police dog. Kisor asserts that a rational trier of fact could not have found that he possessed such knowledge.

Because the evidence showed that Kisor was attempting to escape into a wooded area, the jury could have reasonably inferred that Kisor knew or would know that a police tracking dog would be the most effective means to track him. Furthermore, Lucky was equipped with a harness, reflectors, bell, and badge which greatly increased his visibility and identified him as a police dog. There was evidence, also, that Lucky was trained not to take defensive measures as he pursued and confronted a suspect. That evidence would suggest that Lucky came directly at Kisor, thus exposing his identification as a police dog. Additionally, an expert witness testified that he believed the fact that Lucky was found with a stick in his mouth indicates that Kisor lured the dog with the stick and then fired into his chest. This suggests that Kisor was aware that Lucky was tracking him. When all of this evidence is viewed in the light most favorable to the State, we can say that it was sufficient to permit the jury to infer that Kisor knew or should have known that Lucky was a police dog.

Kisor also challenges the sufficiency of the evidence to support the jury's finding that Lucky was a "police dog". A "police dog" is defined in RCW 4.24.410 as "a dog used by a law enforcement agency specially trained for law enforcement work and under the control of a dog handler." A dog handler is defined in RCW 4.24.410(1)(b) as:

a law enforcement officer who has successfully completed training as prescribed by the Washington state criminal justice training commission in police dog handling.

As for Lucky being a police dog, the State presented evidence that Lucky had undergone 480 hours of training with

Officer Mitchum. That is sufficient to show that Lucky was "specially trained for law enforcement work". Furthermore, Mitchum was asked on direct examination if, in May of 1990, he was the dog handler for Lucky. He responded to that question: "Yes, sir." In addition, as noted above, there was testimony that Mitchum and Lucky had undergone 480 hours of training together. Although no witness specifically stated that the 480 hours of training was the training "prescribed by the Washington state criminal justice training commission", we believe that this evidence, when viewed most favorably to the State, is sufficient to establish that Lucky was "under the control of a dog handler".

### JURY INSTRUCTIONS

Kisor assigns error to the trial court's giving of instruction 8, relating to the charge of harming a police dog. The instruction read as follows:

> A person knows or acts knowingly or with knowledge when he or she is aware of a fact, facts or circumstances or result described by law as being a crime.
>
> If a person has information which would lead a reasonable person in the same situation to believe that facts exist which are described by law as being a crime, the jury is permitted but not required to find that he or she acted with knowledge.
>
> Acting knowingly or with knowledge also is established if a person acts intentionally.

As a companion argument, Kisor assigns error to the trial court's failure to give his proposed instruction on knowledge, the proposed instruction being limited to the first paragraph of the longer instruction given by the trial court. Kisor argues that the second and third paragraphs of instruction 8 should not have been given on the charge of harming a police dog because "the State produced no evidence indicating that the defendant knew or had actual reason to know that he was shooting a police dog."

Kisor concedes that the instruction given by the trial court is a standard instruction. *See* WPIC 10.02. Furthermore, the instruction has been found to be constitutional.

*State v. Leech*, 114 Wn.2d 700, 710, 790 P.2d 160 (1990). Kisor's argument that there is no evidence to support the giving of the instruction fails because, as we have observed above, there was sufficient evidence from which the jury could infer that Kisor knew or had reason to know he was shooting a police dog.

### SENTENCE FOR BURGLARY

Kisor also assigns error to the sentence imposed by the court for first degree burglary. Specifically, he contends that the trial court erred in concluding that his offender score for burglary in the first degree was 7 rather than 6. The trial court's determination that Kisor's offender score was 7 was based on its determination that the theft of the Blazer did not merge with the burglary because the two crimes did not encompass the "same criminal conduct". In support of his argument, Kisor asserts that the burglary and the theft of the Blazer encompassed the same criminal conduct because each crime occurred at the same time and place, involved the same victim, and Kisor's criminal intent did not change.

The pertinent statute is RCW 9.94A.400(1)(a), which provides, in part, as follows:

> Except as provided in (b) of this subsection, whenever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score: PRO-VIDED, *That if the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime.* Sentences imposed under this subsection shall be served concurrently. . . . *"Same criminal conduct," as used in this subsection, means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim.*

(Italics ours.)

We need not devote a great deal of attention to this assignment of error because Kisor has essentially abandoned it, his counsel conceding at argument before this court that the law is contrary to Kisor's position. The concession is

not surprising in light of the recent case of *State v. Lessley*, 118 Wn.2d 773, 827 P.2d 996 (1992), in which our Supreme Court indicated that the burglary antimerger statute[4] permits a sentencing judge the discretion to punish, separately, a crime committed during a burglary regardless of whether it and the burglary encompassed the same criminal conduct. Because, as Kisor concedes, the theft of the Blazer occurred in the commission of the burglary, the sentencing judge did not abuse her discretion in refusing to merge the burglary with the theft of the Blazer.

## COMMUNITY PLACEMENT

Kisor claims that the trial court erred in sentencing him to a 1-year term of community placement. Pursuant to RCW 9.94A.120(8)(a), community placement may be ordered for a term of 1 year when a person is sentenced for: (1) a sex offense; (2) a serious violent offense; (3) assault in the second degree; (4) any crime against a person where it is determined that the defendant or an accomplice was armed with a deadly weapon; or (5) a felony offense under the Uniform Controlled Substances Act. Here, the trial court did not disclose which of Kisor's convictions it believed justified a community placement sentence, nor what serious violent offense Kisor had committed to fall under RCW 9.94A-.120(8)(a).

The trial court merely listed three reasons for its decision to sentence Kisor to a term of community placement: (1) Kisor shot at Taylor and Wolf; (2) Kisor aimed a cocked and loaded gun at Officer Ray; and (3) Kisor had an extensive criminal history. None of these reasons provide a basis for imposing community placement. Kisor's acts against Taylor, Wolf and Ray formed the basis for the charges of attempted murder. Because Kisor was acquitted of those charges, it was

---

[4]The burglary antimerger statute, RCW 9A.52.050, provides:

"Every person who, in the commission of a burglary shall commit any other crime, may be punished therefor as well as for the burglary, and may be prosecuted for each crime separately."

improper for the sentencing judge to consider those acts as a basis for the community placement order. Likewise, any consideration of Kisor's lengthy criminal history was improper, criminal history not being listed in RCW 9.94A.120(8)(a) as a basis for community placement.

The State argues that we should uphold the imposition of the community placement order because at least one of Kisor's offenses was a "serious violent offense". A "serious violent offense" is defined in RCW 9.94A.030(27) as follows:

> "Serious violent offense" is a subcategory of violent offense and means:
> (a) Murder in the first degree, homicide by abuse, murder in the second degree, assault in the first degree, kidnapping in the first degree, or rape in the first degree, assault of a child in the first degree, or an attempt, criminal solicitation, or criminal conspiracy to commit one of these felonies; or
> (b) Any federal or out-of-state conviction for an offense that under the laws of this state would be a felony classified as a serious violent offense under (a) of this subsection.

It is readily apparent that none of the crimes that Kisor was convicted of fall within the definition of "serious violent offense". Therefore, there was no legal basis for the community placement order and we must set it aside.

## RESTITUTION

Kisor claims that it was error for the trial court to award $17,380 in restitution, based solely upon the State's affidavit. Kisor contends that the conclusory nature of the State's affidavit infringed upon his due process rights at the restitution hearing.

The trial court has discretion to determine the amount of restitution. *State v. Mark*, 36 Wn. App. 428, 433, 675 P.2d 1250 (1984). We will find abuse of that discretion only where its exercise is manifestly unreasonable, or exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). Restitution need not be proved with specific accuracy, evidence being sufficient if it affords a reasonable basis for estimating loss. *Mark*, 36 Wn. App. at 434.

■■ Although the setting of restitution is an integral part of sentencing, the Rules of Evidence do not apply at restitution hearings. *State v. Pollard*, 66 Wn. App. 779, 784, 834 P.2d 51 (1992).

Evidence presented at restitution hearings, however, must meet due process requirements, such as providing the defendant with an opportunity to refute the evidence presented, and being reasonably reliable. *Pollard*, 66 Wn. App. 784-85 (citing *State v. Strauss*, 119 Wn.2d 401, 418, 832 P.2d 78 (1992)). In other words, the amount of restitution must be established with " 'substantial credible evidence' " which "does not subject the trier of fact to mere speculation or conjecture." (Citations omitted.) *State v. Fambrough*, 66 Wn. App. 223, 225, 831 P.2d 789 (1992). When the evidence is comprised of hearsay statements, the degree of corroboration required by due process is not proof of the truth of the hearsay statements "beyond a reasonable doubt", but rather, proof which gives the defendant a sufficient basis for rebuttal. *State v. S.S.*, 67 Wn. App. 800, 807-08, 840 P.2d 891 (1992).

Here, the restitution award was based upon the State's affidavit, which contained the hearsay declarations of Aadne Benestad. The affidavit appears to us to be nothing more than a rough estimate of the costs associated with purchasing a new animal and training it. Other than Benestad's statement, that she "checked" with the Tacoma police and the Spokane Canine Training Unit, there is no indication of where Benestad obtained the figures as to the cost of purchasing the animal and training it and the dog's handler. Although Benestad referenced an advertisement from the West Virginia Canine College, there is nothing in that advertisement that supports the figures advanced by Benestad. In short, Benestad's affidavit is not substantial credible evidence of the restitution figure set by the court. Due process was offended by the trial court's reliance upon the State's affidavit and we thus reverse the restitution order and remand for a new restitution hearing. We also reverse the

order for community placement and affirm the trial court in all other respects.

MORGAN and SEINFELD, JJ., concur.

Review denied at 121 Wn.2d 1023 (1993).