IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 30280-6-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| JODY DANIELLE BORING, | ) | |
| | ) | |
| Appellant. | ) | |

KORSMO, C.J. — Jody Boring appeals a $550,433 restitution order, claiming the trial court erred in holding her jointly and severally liable because she was not convicted as an accomplice. She also claims the trial court erred in finding a causal connection between her role in the crime and all of the victim's material losses, and by denying her request for a continuance to investigate the restitution claims. We affirm.

BACKGROUND

In 2005, Jody Boring's husband, Christopher, began working at the Hewes Marine Company (Hewes) factory in Colville, Washington. Hewes is a manufacturer of aluminum fishing boats. In 2008, Hewes determined that someone was taking both aluminum sheet and scrap material from its factory.

In August 2007, a company named Bella Boats began selling scrap metals to Action Recycling Inc. in Spokane. Bella Boats sold to Action a large amount of aluminum 5052, a rare marine grade alloy that Hewes used in making boats. Mr. and Mrs. Boring both signed invoices from Action on behalf of Bella Boats, and Action employees recognized the couple as representatives of Bella Boats. Mrs. Boring would occasionally deliver materials to Action, and each delivery usually consisted of several hundred pounds of metal on a pallet.

While investigating the missing Hewes's materials, law enforcement officers recovered two pallets of material that had been sold to Action by Bella Boats. Employees identified the materials as belonging to Hewes based on the distinctiveness of the metal as well as the markings on it.

The State charged Mrs. Boring with aggravated first degree trafficking in stolen property, and alternatively charged her as an accomplice.[1] Mr. Boring admitted at trial to taking the Hewes's materials and asking Mrs. Boring to deliver them to Action, but he testified that Mrs. Boring was unaware the materials were stolen. Mrs. Boring also testified that she delivered truckloads of aluminum and scrap metal, but denied knowing the materials were stolen. The jury found Mrs. Boring guilty of the lesser degree offense

---

[1] The State charged Mr. Boring with aggravated first degree theft and aggravated first degree trafficking in stolen property; he pleaded guilty to both charges. His appeal to this court, cause no. 30283-1-III, is linked with this case for consideration.

of second degree trafficking in stolen property and also found that the crime was a major economic offense or series of offenses.

At the beginning of the restitution hearing, Mrs. Boring sought a continuance to obtain a witness who would testify that other employees were stealing metal from Hewes during the same time period as the Borings. The State objected to the continuance, contending it would establish the amount of restitution based on what the Borings sold to Action rather than the amount of material Hewes reported as lost. The trial court denied the continuance request.

Between August 2007 and August 2010, the Borings sold 226 loads of aluminum to Action. They received a total of $213,758.52 for 360,799 pounds of aluminum at an average of $.59 per pound. The State also presented evidence that the value of the aluminum to Hewes was $556,133.00 based on the cost Hewes was paying for aluminum between 2007 and 2010. Bill Hewes, a part owner and chief financial officer of Hewes, presented evidence of hypothetical costs to Hewes based on three different assumptions of the ratio between sheet metal and scrap metal in each of the pallets sold. He testified that if the percentage of raw material to scrap material were 55 percent, the cost to Hewes would be $481,219.00; if it were 70 percent, the cost would be $556,133.00; and if it were 85 percent, the cost would be $631,048.00. Mr. Hewes contended that based on the two recovered pallets, the 70 percent estimate would be conservative.

3

The trial court entered a restitution order for $550,433.00, representing its estimate of Hewes's losses. The trial court also found Mrs. Boring jointly and severally liable with Mr. Boring. Mrs. Boring timely appealed to this court.

## ANALYSIS

Mrs. Boring claims the court erred in finding she was jointly and severally liable with Mr. Boring and that there was no causal connection between her actions and Hewes's losses. She also claims the trial court erred by denying her request for a continuance and in calculating the restitution award. We address each argument in turn.

Mrs. Boring's first argument is that she could not be held jointly and severally liable for restitution because she was not convicted as an accomplice. The problem with this argument is that it ignores the broad language of the restitution statute.

The authority to impose restitution is statutory. *State v. Griffith*, 164 Wn.2d 960, 965, 195 P.3d 506 (2008). The court shall order restitution "whenever the offender is convicted of an offense which results in injury to any person or damage to or loss of property." RCW 9.94A.753(5). There is no requirement that a victim's damages be foreseeable in order to support a restitution order. *State v. Enstone*, 137 Wn.2d 675, 680-82, 974 P.2d 828 (1999). In interpreting the restitution statutes, we must "recognize that they were intended to require the defendant to face the consequences of his or her criminal conduct." *State v. Tobin*, 161 Wn.2d 517, 524, 166 P.3d 1167 (2007).

4

Accordingly, the court should not engage in an overly technical construction that would permit the defendant to escape from just punishment. *Id.* The legislature intended "to grant broad powers of restitution" to the trial court. *State v. Davison*, 116 Wn.2d 917, 920, 809 P.2d 1374 (1991).

We review a restitution order for an abuse of discretion. *State v. Dedonado*, 99 Wn. App. 251, 255-56, 991 P.2d 1216 (2000). A trial court abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

While finding Mrs. Boring guilty, the jury was not specifically asked to find that she was an accomplice. When entering the restitution order, the judge stated:

> I want to say though that under law and I'm comfortable doing this, this is a joint and several obligation. The jury found that there was uh an accomplice here and uh in cahoots with her husband for three years uh taking aluminum from his employer. And of course, her part I think was probably a lesser part but uh nonetheless she was there mixed up in it and uh this would be a joint and several uh liability on the part of both of them.

Report of Proceedings (Jan. 31, 2012) at 96. The court ordered that Mrs. Boring and Mr. Boring were jointly and severally liable for the total restitution amount.

"[T]he restitution statute sweeps far more broadly than the accomplice liability statute, requiring neither knowledge nor foreseeability of the injury, but merely a causal relationship." *State v. Israel*, 113 Wn. App. 243, 300, 54 P.3d 1218 (2002). Mrs. Boring did not have to be convicted as an accomplice, or have knowledge that she was selling

5

stolen goods, to be liable for the restitution due to Hewes. The jury's verdict, supported by her own testimony, was that she was selling the materials to Action at the request of her husband. Their joint actions resulted in the loss and damage to Hewes; the trial court did not err in ordering them jointly and severally liable.

Mrs. Boring also argues that there was no causal connection between her role in the crime and all of Hewes's material losses. However, this argument ignores the fact that her actions, which directly damaged the stolen property, were part of the overall scheme to make a profit by recycling the stolen materials.

A court has statutory authority to impose restitution whenever a defendant is convicted of an offense that results in loss of property. RCW 9.94A.753(5); *Griffith*, 164 Wn.2d at 965. Restitution is allowed solely for losses "'causally connected'" to the crimes charged. *Tobin*, 161 Wn.2d at 524 (quoting *State v. Kinneman*, 155 Wn.2d 272, 286, 119 P.3d 350 (2005)). Losses are causally connected if, but for the charged crime, the victim would not have incurred the loss. *Id.* A trial court has broad discretion in making reasonable inferences regarding the causal connection between the crime and expenses. *State v. Pierson*, 105 Wn. App. 160, 168, 18 P.3d 1154 (2001).

There is no requirement that a victim's damages be foreseeable in order to support a restitution order. *Enstone*, 137 Wn.2d at 680-82. Where defendants are jointly and severally responsible for the restitution, "[t]he relevant causal connection is between the

damage and the committed offense . . . not between the damage and [a defendant]'s

individual offense." *State v. Hiett*, 154 Wn.2d 560, 564, 115 P.3d 274 (2005).

Mrs. Boring argues that Hewes's losses resulted from her husband's theft of the

materials, an action that occurred before her criminal acts of selling the materials to

Action, and therefore she cannot be liable for those parts of the general scheme that

occurred before her own criminal activity under *State v. Acevedo*, 159 Wn. App. 221, 248

P.3d 526 (2010).

In *Acevedo*, the defendant was found guilty of possession of a stolen motor

vehicle. The vehicle had been stripped and partially scrapped before it was recovered in

the defendant's possession; the trial court ordered the defendant to pay for the full value

of the car before it was stolen. *Id.* at 229. This court reversed the restitution order,

holding:

> The Acura, then, was stripped before Mr. Acevedo bought it. No evidence
> shows or suggests that Mr. Acevedo stole the car or possessed the car since
> it was stolen or when it was damaged. Accordingly, no evidence shows
> that the Acura would not be stripped "but for" Mr. Acevedo's possession of
> it. The State, then, failed to show a causal connection between Mr.
> Acevedo's crime and the damage to Mr. Wold's Acura.

*Id.* at 230-31.

Here, however, there was a causal connection between the loss suffered by Hewes

and the crime for which Mrs. Boring was convicted. Since Mr. and Mrs. Boring were

operating jointly, the relevant causal connection is between the damage and the actions of

stealing and selling the metal for profit rather than simply Mrs. Boring's individual trafficking conviction. *See Hiett*, 154 Wn.2d at 564. Although Hewes suffered an initial loss when Mr. Boring stole the materials, it was Mrs. Boring's actions in disposing of them that damaged the materials to the point they were unrecoverable. But for Mrs. Boring's actions, Hewes might have been able to recover the stolen materials. Unlike *Acevedo*, where there was no evidence the defendant caused any of the damage to the stolen property, Mrs. Boring's actions directly damaged the materials. It was the joint actions of the Borings which led to the damages suffered by Hewes. The trial court did not err in finding a causal connection between Mrs. Boring's role in the crime and all of Hewes's material losses.

Mrs. Boring also challenges the denial of her request for a continuance to investigate Hewes's restitution claims and the manner of calculating restitution. The decision to grant or deny a motion for continuance rests within the sound discretion of the trial court, and the reviewing court will not disturb the trial court's ruling absent a showing that the trial court abused its discretion. *State v. Bailey*, 71 Wn.2d 191, 426 P.2d 988 (1967). When deciding whether to grant a continuance, trial courts may consider many factors, including surprise, diligence, redundancy, due process, materiality, and maintenance of orderly procedure. *State v. Eller*, 84 Wn.2d 90, 95, 524 P.2d 242 (1974); RCW 10.46.080.

8

Mrs. Boring sought a continuance to obtain a witness who would testify that other employees were stealing metal from Hewes and show that Hewes did not accurately calculate its losses. The trial court denied the motion on the grounds that if restitution were derived from the Action records, then confounding issues like poor inventory controls and other thieves would not be relevant to the amount of restitution.[2]

The trial court did not abuse its discretion in denying the continuance. Since the State did not prove restitution on the basis of Hewes's inventory, any evidence of other employees stealing from Hewes was immaterial. The trial court did not abuse its discretion by denying Mrs. Boring's request for a continuance.

The trial court also did not err in ordering restitution in the amount of $550,433.00. Courts have broad discretion when determining the restitution amount. *Kinneman*, 155 Wn.2d at 282. If a defendant disputes the restitution amount, the State must prove the damages by a preponderance of the evidence. *Id.* at 285. Evidence is sufficient to support a restitution order if it provides a reasonable basis, other than conjecture or speculation, to estimate the loss. *Id.*; *State v. Fleming*, 75 Wn. App. 270, 274-75, 877 P.2d 243 (1994). Restitution is not limited to cases where the damage computation is simple. *Kinneman*, 155 Wn.2d at 285. The rules of evidence do not apply

---

[2] As noted previously, the State used receipts recovered from Action to show how much the Borings sold there and also what it cost Hewes, based on its average costs during that period, to originally obtain that aluminum.

to restitution hearings. ER 1101(c); *State v. Kisor*, 68 Wn. App. 610, 620, 844 P.2d 1038 (1993). Instead, basic due process concerns govern this situation—whether the defendant had the opportunity to contest the evidence and whether the evidence was reasonably reliable. *Kisor*, 68 Wn. App. at 620.

The restitution award was established by a preponderance of the evidence. The State presented evidence of how much aluminum the Borings sold to Action and the dates they sold it. The State then calculated the loss to Hewes by looking at the amount Hewes paid for the aluminum in the corresponding year, and presenting estimates of the percentage of the stolen materials that was likely raw aluminum as opposed to scrap aluminum. Mrs. Boring takes issue with the fact that Hewes's estimated losses are far greater than the profit made by the Borings, but Action was not paying full value for the metal because it was recycling it. This discrepancy can be explained under a theory that does not involve thefts by other employees, and it does not indicate that the restitution order was in error. The trial court did not err in denying the motion for a continuance or in awarding a restitution amount of $550,433.00.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to

No. 30280-6-III
State v. Boring

RCW 2.06.040.

_____
Korsmo, C.J.

WE CONCUR:

_____
Kulik, J.

_____
Siddoway, J.

11