

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 68504-0-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| JONATHAN MICAH STRONG, | ) | |
| | ) | |
| Appellant. | ) | FILED: June 17, 2013 |

SCHINDLER, J. — Jonathan Micah Strong pleaded guilty to possession of a stolen vehicle and agreed to pay for all damages to the motorcycle. Strong contends the restitution ordered by the court is not causally connected to the crime. Because the documentation establishes a causal connection for the amount of restitution, we affirm.

FACTS

In October 2010, Michael Rice reported that his 1999 Kawasaki motorcycle had been stolen. In December, a confidential informant told the police that Jonathan Micah Strong had a stolen motorcycle at his home in Federal Way. On December 28, the police executed a search warrant and found Rice's stolen 1999 Kawasaki Ninja ZX900 900cc motorcycle.

The State charged Strong with possession of a stolen vehicle.[1] Strong entered into a plea agreement. Strong agreed to plead guilty and pay restitution "for all damage to [the] stolen motorcycle" in an amount to be determined. Strong stipulated that for purposes of sentencing, the court could consider as "real and material facts" the facts set forth in the certification for determination of probable cause.

The certification for probable cause states that Jeremy Allen Ulrich agreed to steal a motorcycle for Strong. Strong planned to purchase a wrecked motorcycle of the same year, make, and model and then rebuild it with parts from the stolen motorcycle. Strong and Ulrich located a 1999 Kawasaki Ninja motorcycle with blue and white-colored flame graphics on the front fairings two or three miles away from Strong's house in Federal Way.[2] When Ulrich had trouble starting the motorcycle, Strong "broke out" the ignition and Ulrich drove the motorcycle to Strong's garage. The certification states that Strong and Ulrich scraped the blue and white-colored flames off the front fairing.

The police were "able to start the motorcycle by inserting a screwdriver into the bored out ignition [and] pushing the handle-mounted start button." The certification states that Rice came to Strong's house to take possession of the Kawasaki and told the police that "his ignition and lower right fairing now have damage" that did not exist before his motorcycle was stolen.

Before the restitution hearing, the State submitted a "Stolen Vehicle Worksheet" (Worksheet) signed by Rice under penalty of perjury. Attached to the Worksheet is his

---

[1] In the same information, the State charged Jeremy Allen Ulrich with possessing stolen property in the second degree.

[2] A "fairing" is a structure intended "to produce a smooth outline and to reduce drag or head resistance." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 816 (2002); see also Dunn v. Wixom Bros., 493 So.2d 1356, 1358 (Ala. 1986) ("A fairing is a device which is attached to the front of a motorcycle to deflect wind and rain away from the rider. It can be attached either to the frame of the motorcycle itself, or to the front fork or handlebars of the motorcycle.").

2

"Victim Impact Statement" and an estimate for repairs totaling $7,637.79 prepared by Puget Sound Motorcycles. In the Worksheet, Rice describes the damages to the motorcycle from the crime as: "All cowling/fairings[3] scratched from being laid down[,] some are broken, paint chipped off of tank, foot pegs are losing the rubber from being put on its side, engine covers scratched up." In his Victim Impact Statement, Rice states that before the motorcycle was stolen, it was "like new" and "ran great," but now "it runs rough."

> My bike was like new, ran great[,] no scratches, I had bought it from my cousin. Now there are panels hanging off, my tach/speed-ometers don't work, it runs rough. I love my bike like a child[,] take great care of it, and to see the damage and not be able to ride it this summer was totally devastating to me. My bike was discontinued after 2000, they changed it to the ZX10 and you don't see the ZX9's around very much, so I think it[']s unique in that it's not a 600 or 1,000 cc bike (like everyone has). I just want my bike the way it was, that[']s it.

The two-page estimate of repairs includes the cost to repair or replace the ignition and upper front fairing as well as other parts of the motorcycle, such as the mirrors, windshield, cowlings, footpegs, driver's seat, generator and clutch covers, voltage regulator, rear brake pads, muffler, fuel tank, and fuel tank decal.

Strong argued the documentation did not establish a causal connection between all of the damages in the estimate and his crime. Strong argued the facts set forth in the certification for determination of probable cause did not support restitution for all the damages in the estimate.[4]

---

[3] A "cowling" is "a metallic cover over or around any engine." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 526 (2002).

[4] Strong also argued the State failed to establish the amount of restitution by a preponderance of the evidence because the estimated cost of repairs exceeded the value of the motorcycle. Strong submitted copies of advertisements showing prices for similar motorcycles in support.

The sentencing court concluded the evidence established a causal connection between the crime and all of the damages to the motorcycle, and entered an order of restitution for $7,637.79.[5]

## ANALYSIS

Strong concedes he is responsible for the damage to the missing license, the ignition, and from scraping the graphics off the front fairing. Strong contends the court erred in ordering restitution for all of the damages identified in the Worksheet because the State did not prove a causal connection between the damages the victim sought and the crime.

The authority to impose restitution is entirely statutory. State v. Tobin, 161 Wn.2d 517, 523, 166 P.3d 1167 (2007). Under RCW 9.94A.753, the court shall order restitution "whenever the offender is convicted of an offense which results in . . . damage to or loss of property." RCW 9.94A.753(5). Restitution "is allowed only for losses that are 'causally connected' to the crimes charged." Tobin, 161 Wn.2d at 524. That is, "but for" the defendant's criminal acts, the damages for which the State seeks restitution would not have occurred. Tobin, 161 Wn.2d at 524, 527; State v. Landrum, 66 Wn. App. 791, 799, 832 P.2d 1359 (1992) (interpreting similar restitution statute).

We will not disturb a sentencing court's order of restitution absent abuse of discretion. Tobin, 161 Wn.2d at 523. A court abuses its discretion when the restitution decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons. State v. Enstone, 137 Wn.2d 675, 679-80, 974 P.2d 828 (1999). Application

---

[5] The order of restitution states that restitution is a joint and several obligation with Ulrich under King County Superior Court Cause No. 11-C-06906-7 if he is convicted and ordered to pay under a separate order.

of an incorrect legal analysis or other error of law can constitute abuse of discretion. Tobin, 161 Wn.2d at 523.

In determining whether this causal connection exists, the court can consider those facts admitted in the plea agreement or admitted, acknowledged, or proved at the restitution hearing. State v. Dedonado, 99 Wn. App. 251, 256, 991 P.2d 1216 (2000). "Absent agreement from the defendant as to the amount of restitution, the State must prove the amount by a preponderance of the evidence." Tobin, 161 Wn.2d at 524.

Here, Strong argues the State did not prove a causal connection between all of the damages identified in the estimate attached to the Worksheet and the crime. There is no dispute Strong agreed to pay for all damages to the motorcycle in an amount to be determined. The documentation submitted before the restitution hearing, as well as the certification, supports a causal connection between the crime and the restitution the court ordered. The State submitted documentation to support the request for the repairs to the motorcycle. In the Worksheet, Rice states under penalty of perjury that all the damages described on the Worksheet and attached estimate were incurred "as a result of the crime investigated under the above cause number."[6] Rice also states that before the crime, the motorcycle was "like new," "ran great," and had "no scratches," but after Strong's possession of the motorcycle, it "runs rough" with damaged parts, including "panels hanging off" and "tach/speed-ometers [that] don't work."

Dedonado is distinguishable. In Dedonado, the defendant Dedonado burglarized an electronics shop and stole a van. Dedonado, 99 Wn. App. at 253. Dedonado pleaded guilty to the crime of taking a motor vehicle without permission. Dedonado, 99 Wn. App. at 253. The State sought restitution for a damaged generator that the

---

[6] (Emphasis added.)

5

electronics shop owner replaced with a new generator and the cost to repair the van. <u>Dedonado</u>, 99 Wn. App. at 253. Dedonado objected to restitution for the generator, arguing that the "Property Restitution Estimate" did not establish the replacement generator was comparable in cost or function to the damaged generator. <u>Dedonado</u>, 99 Wn. App. at 253. Dedonado also objected to the documentation of the repair costs for the van, arguing the mechanic's preliminary repair estimate for damage to the van included items such as " 'DOME LAMP BULBS,' 'FILL ALL FLUIDS,' 'ALIGN FRONT SUSPENSION,' and 'REMOVE/REPLACE R LIFTGATE GRILLE' " that were not causally connected to Dedonado's crime. <u>Dedonado</u>, 99 Wn. App. at 255. We held that the State did not provide sufficient documentation to support the request for the replacement generator or that the repairs to the van were causally related to the damage to the ignition switch. <u>Dedonado</u>, 99 Wn. App. at 257.

Strong relies on the statement in <u>Dedonado</u> that "[a] causal connection is not established simply because a victim or insurer submits proof of expenditures for replacing property stolen or damaged by the person convicted," to argue the State did not provide sufficient documentation of a causal connection. <u>Dedonado</u>, 99 Wn. App. at 257. But unlike in <u>Dedonado</u> where the State relied solely on a mechanic's estimate to prove the damages to the van, here, the State also introduced Rice's sworn Worksheet and his Victim Impact Statement stating that the motorcycle had been "like new" before the crime, but now "runs rough" and, as a result of the crime, required all the repairs identified on the estimate.

The other cases Strong relies on, <u>State v. Kisor</u>, 68 Wn. App. 610, 844 P.2d 1038 (1993), and <u>State v. Pollard</u>, 66 Wn. App. 779, 834 P.3d 51 (1992), are also

6

distinguishable. In <u>Kisor</u>, the defendant challenged the cost to purchase and train a police dog, not the causal connection between his crime and the claimed damages. <u>Kisor</u>, 68 Wn. App. at 619-20. <u>Pollard</u> involved a challenge to a restitution award based on a defendant's unlawful issuance of checks where the only evidence in the record supporting the restitution amount was a police report with statements from the bank personnel. <u>Pollard</u>, 66 Wn. App. at 786. We concluded that, standing alone, the double hearsay was an insufficient basis upon which to base restitution. <u>Pollard</u>, 66 Wn. App. at 786. Here, unlike in <u>Pollard</u>, Strong agreed to the facts in the certification and the State submitted documentation from Rice submitted under penalty of perjury.

We affirm.

WE CONCUR: