IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 78723-3-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JACOB LAWRENCE SIMPSON, | ) | |
| | ) | |
| Appellant. | ) | FILED: November 18, 2019 |
| | ) | |

ANDRUS, J. — Jacob Lawrence Simpson pleaded guilty to possession of a stolen vehicle and agreed to pay restitution for all damages to the car. He challenges the trial court's restitution order, claiming it is not supported by substantial credible evidence. We affirm the order of restitution.

## FACTS

A King County Sheriff's Deputy arrested Simpson after finding him sitting in the driver's seat of Rachel Grubb's stolen 1989 Toyota Camry, inserting a tool into the car's damaged ignition. Simpson pleaded guilty to possession of a stolen vehicle and agreed to pay restitution to Grubb. His felony plea agreement specifically stated, "Pursuant to RCW 9.94A.753, the defendant shall pay restitution in full to the victim(s) on charged counts and agrees to pay restitution to be determined for all lost items from [the] vehicle and damages to the vehicle."

The court scheduled a restitution hearing to determine the amount of Simpson's restitution.

The State called Grubb to testify about the losses she sustained and documented in a sworn victim impact statement. Grubb stated that when she purchased the car from a family member at a below market price of $1,200 in 2014, it had about 115,000 miles on it and had been very well maintained by its one previous owner. While she owned it, she also kept the car in excellent condition and put another 20,000 to 30,000 miles on it.

When Grubb recovered the car four months later, she found a damaged ignition, loose wires under the steering column, and more wires duct taped to a destroyed gear selector. A small back window was patched with electrical tape. Hypodermic needles and other debris, including food and cigarette butts, littered the vehicle. An ashtray had been manually inserted into the center console. The trunk was full of water and rusted, and the back seat was loose. The car's bumper was damaged, and the license plate was missing. Additionally, the steering wheel was vandalized with graffiti; an air freshener was nailed to the dashboard, causing the dashboard to crack; and the stereo's face was missing.

Grubb testified that when she heard that law enforcement had found the Camry, she expected to be able to drive it home. But when she arrived, the steering column damage made it impossible to start the car. She also believed the battery might be dead because she could not roll up the electric windows. Grubb was afraid to touch the car because of the needles and garbage in it. She needed to remove the vehicle from the lot where it was found to avoid towing and impound

costs. She concluded the vehicle was inoperable and totaled, and she sold it to a junkyard for $25.

To calculate her loss, Grubb conducted online research at Carsforsale.com for cars that were similar in year, make, and model to her 1989 Camry. She found a 1989 Toyota Camry Deluxe advertised for sale in Arizona for $2,950, with no mileage listed. Grubb also found a 1989 Camry luxury edition (LE) in Aberdeen, Washington, with a list price of $1,888 and 172,000 miles. She also submitted information from National Automobile Dealers Association (NADA) Guides indicating that 1989 Camry LE's ranged in price from $1,950 to $4,000, with an average resale price of $3,050. The State presented photos Grubb took of the damage and copies of the online estimates Grubb found for the car's value. Grubb asked the court to award $2,950 in restitution.

In detailed oral findings, the court found that Simpson had stipulated in the plea agreement to the fact that the vehicle was a 1990 Camry,[1] with approximately 135,000 to 145,000 miles on it and in very good condition when it was stolen. It found that when discovered, the car had been extensively damaged as described by Grubb in her testimony. It found the car was not drivable, could not have reasonably been repaired, and was a total loss. The court found Grubb's testimony as to the likely value of the stolen car credible. Based on Grubb's online research and this testimony, the court found the likely value of the vehicle when stolen was between $1,888 and $4,000. Given the uncontested testimony that the vehicle

---

[1] When initially recovered, the car bore license plates for a 1990 Toyota. After running the vehicle identification number (VIN), the deputy confirmed it was actually Grubb's 1989 Camry.

was in above average condition, the court found that the request for compensation in the amount of $2,950 was reasonable. The trial court ordered Simpson to pay $2,925 in restitution, the amount Grubb requested, minus the $25 she received from the junkyard. Simpson appeals.

## ANALYSIS

Simpson argues the restitution order is not supported by substantial credible evidence because the State offered no receipts for repairs, no estimates for the cost of repairs, and no appraisals for the actual value of the car prior to its theft. Simpson's argument is contrary to standards established by statute and case law.

We review a trial court's order of restitution for an abuse of discretion. State v. Tobin, 161 Wn.2d 517, 523, 166 P.3d 1167 (2007). A trial court abuses its discretion when its decision is "'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" State v. Pollard, 66 Wn. App. 779, 785, 834 P.2d 51 (1992) (quoting State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

A trial court must order restitution whenever the offender is convicted of an offense which results in damage to or loss of property, unless the trial court makes a record of the extraordinary circumstances that make restitution inappropriate. State v. Deskins, 180 Wn.2d 68, 81, 322 P.3d 780 (2014); RCW 9.94A.753(5). In this case, Simpson agreed, as a part of his plea agreement, to pay Grubb restitution "to be determined for all lost items from [the] vehicle and damages to the vehicle."[2]

---

[2] At the restitution hearing, Simpson challenged the causal connection between the damage to the Camry and his possession of the vehicle. The court acknowledged that, generally,

While the statute precludes restitution for speculative and intangible losses, State v. Kinneman, 155 Wn.2d 272, 285, 119 P.3d 350 (2005), the amount need only be based on "easily ascertainable damages" for injury to or loss of property, RCW 9.94A.753(3). Certainty of damages need not be proven with specific accuracy; rather, evidence of damage is sufficient if it affords a reasonable basis for estimating loss and does not subject the trier of fact to mere speculation or conjecture. Deskins, 180 Wn.2d at 82-83; see also Kinneman, 155 Wn.2d at 285. If "substantial credible evidence" establishes damages at the restitution hearing, the trial court has not abused its discretion. Pollard, 66 Wn. App. at 785 (quoting State v. Mark, 36 Wn. App. 428, 434, 675 P.2d 1250 (1984)).

Because Simpson disputed the restitution amount, the State was required to prove, by a preponderance of the evidence, a reasonable basis for estimating Grubb's loss. Deskins, 180 Wn.2d at 82; State v. Von Thiele, 47 Wn. App. 558, 565, 736 P.2d 297 (1987). Grubb's testimony, photographs of the damage to the car, and Grubb's estimate of the car's value when stolen provide this reasonable basis. We conclude that the trial court reasonably exercised its discretion in ordering Simpson to pay $2,925 in restitution to Grubb.

Simpson cites Pollard and State v. Kisor, 68 Wn. App. 610, 844 P.2d 1038 (1993), to argue that the trial court should not have relied on Grubb's internet

---

when a person pleads guilty to or is convicted of possession of a stolen vehicle, a causal connection must be established between the damages and the defendant's unlawful possession. But in this case, it relied on Simpson's express agreement that he "shall pay restitution in full to the victims or victim on the charged counts and agrees to pay restitution to be determined for all lost items from the vehicle and damages to the vehicle." See State v. Griffith, 164 Wn.2d 960, 965-66, 195 P.3d 506 (2008). On appeal, Simpson challenges only whether there was substantial credible evidence to establish the amount of restitution ordered.

sources for the vehicle valuation and, instead, should have required documentation of the actual value and condition of the car, both before and after it was stolen. But neither case supports this stringent standard.

In Pollard, the defendant pleaded guilty to unlawfully issuing checks. 66 Wn. App. at 780. Law enforcement interviewed bank personnel to compile a list of the unlawfully issued check amounts. Id. at 781. This court held that a partial report of the interviews, prepared by law enforcement and filed with the trial court, was insufficient to prove restitution because it constituted double hearsay and was incomplete. Id. at 786-87. It remanded for a new hearing to establish the banks' actual losses. Id. at 787.

In Kisor, the trial court based its order of restitution for the death of a police dog on an affidavit from the county's risk manager. 68 Wn. App. at 613-14. The affidavit valued the price of a replacement animal at $3,500, stating "I checked with Tacoma Police Department and with Spokane Canine Training Units." Id. at 614 n.2. It also estimated room and board and deputy wages for the "normal" 12 weeks of training, for a total restitution award of $17,380. Id. Kisor challenged the sufficiency and reliability of the affidavit, contending it was so conclusory that he had no ability to refute the risk manager's estimates. Id. at 619. The court agreed that the reliance on the affidavit violated Kisor's due process rights because the affidavit did not indicate how the risk manager had obtained the figures contained in her cost estimates. Id. at 620. It deemed the affidavit insufficient and remanded for a new restitution hearing. Id.

Pollard and Kisor are distinguishable. Pollard did not involve live testimony from the crime victim, as occurred here. The documentation provided to the court was incomplete, unlike the photographic and documentary evidence supplied by Grubb and the State. And in Kisor, the defendant had insufficient evidence to determine how the affiant had developed her cost estimates, whereas Simpson had the opportunity to cross examine Grubb at length as to the condition of the car when Grubb bought it, when it was stolen, and when Grubb recovered it. The trial court expressly found Grubb credible. Credibility determinations are for the trier of fact and are not subject to review. State v. Mines, 163 Wn.2d 387, 391, 179 P.3d 835 (2008).

Simpson argues that Pollard and Kisor require the State to establish the reliability of the internet valuations Grubb provided. Testimony regarding a car's estimated value as published in a used car price guide is admissible under the market report exception to the hearsay rule. State v. Shaw, 120 Wn. App. 847, 86 P.3d 823 (2004) (affirming jury verdict for first degree possession of stolen property based on detective's testimony about stolen vehicle's market value obtained from online vehicle price guide). The NADA Guide, an automotive industry publication, falls into this category of reliable internet market reports. The NADA Guide provided a range for resale from $1,950 to $4,000, with a nationwide average price of $3,050. Grubb's requested $2,950 was below that average resale price.

Grubb also had advertisements for two 1989 Camrys listed for sale—one for $2,950 with no mileage estimate, and one for $1,888 with over 170,000 miles. Although these ads are hearsay, the rules of evidence do not apply in restitution

hearings. <u>Pollard</u>, 66 Wn. App. at 784. The ads corroborated the reliability of the NADA Guide's valuation.

Grubb estimated that her Camry had 140,000 miles at the time it was stolen. Given this evidence, and Grubb's credible testimony about the condition of her vehicle before it was stolen, the court could easily ascertain that $2,950 was a reasonable, middle-range price to award Grubb so she could purchase another Camry in roughly the same condition as the one Simpson had unlawfully possessed.

The trial court did not base the restitution award on speculation or conjecture. And the court did not abuse its discretion by finding that Grubb's sworn victim impact statement and her unrebutted testimony at the restitution hearing was substantial and credible evidence and a reasonable basis to set the amount of restitution.

Affirmed.

_Andrus, J._

WE CONCUR:

_Chelivell, J._          _Appelwick, C.J._