IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                  Respondent,<br><br>      v.<br><br>B.J.,<br><br>                  Appellant. | No. 86174-3-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

HAZELRIGG, A.C.J. — B.J. appeals an order of restitution imposed after he entered a plea of guilty to one count of reckless burning in the first degree. He challenges the trial court's finding of good cause to continue the date of the restitution hearing, as well as the evidence supporting the amount of restitution. Because B.J. shows no error in the trial court's imposition of restitution, we affirm the award. However, we remand for the trial court to strike the DNA[1] collection fee from B.J.'s disposition and to consider whether to impose interest on restitution pursuant to RCW 10.82.090(2).

FACTS

On September 27, 2021, the State charged B.J. with one count of arson in the first degree based on his involvement in a fire that burned down an old church structure known as "Old Cherry Grove Church," two dwellings, and a storage structure in Battle Ground, Washington. Pursuant to a plea agreement, the State

---

[1] Deoxyribonucleic acid.

filed an amended information and B.J. entered a guilty plea to a reduced charge of reckless burning in the first degree. According to B.J.'s written statement on plea of guilty, on July 5, 2021, he drove his friends to the property, which was owned by Steven Slocum, where B.J.'s friend, M.W., lit a firework and threw it onto the property. B.J. admitted to recklessly causing the fire and driving away. The trial court accepted B.J.'s guilty plea to one count of reckless burning in the first degree.

On January 5, 2022, the court sentenced both B.J. and M.W. Slocum addressed the court and described his losses resulting from the fire, which included not only the buildings themselves, but also furniture, vehicles, antiques, and various items he had collected throughout his life. The trial court imposed identical sentences on both B.J. and M.W. which consisted of 12 months of probation and 24 hours of community service. Additionally, the court ruled that restitution would be set at a future date and explained that B.J. and M.W. would "be jointly and severally liable for it." The court also imposed the $100 DNA collection fee which was mandatory at the time of sentencing.

On July 1, 2022, the State moved for an order to continue the restitution hearing beyond July 5, which was the 180-day statutory deadline. RCW 9.94A.753(1). The State argued there was good cause to continue because additional documentation "need[ed] to be prepared, provided, and reviewed." On July 5, after a hearing on the matter in which both B.J. and M.W. objected, the trial court found good cause to extend the restitution deadline to August 4, 2022.

On August 3, the parties agreed to have the restitution hearing extended again. B.J. and M.W. requested an extension of "at least 60 days" to continue investigating and reviewing "the complex insurance information and documents that ha[d] been provided." B.J. expressly waived his right to a speedy hearing in favor of the 60-day extension and the trial court continued the restitution hearing to September 28, 2022.

On September 28, before the evidentiary hearing on restitution began, the State circulated the waiver and extension orders, which the court signed. Defense counsel noted they were not waiving their original objection to the first extension. Following the State's opening, Slocum testified at length to the property that he lost due to the fire. Slocum purchased the property in 2014 and it was "just shy of an acre." According to Slocum, he was "kind of a hoarder" and chose the property because "it had lots of storage space." Multiple structures were on the property: the church with "a house attached to it and garage and three classroom buildings and various carports," all of which were destroyed. Everything within the buildings was lost as well, which included Slocum's extensive collection of antiques, family heirlooms, and vintage memorabilia. The fire also consumed several vehicles.

On October 7, 2022, the trial court provided its oral ruling on the restitution award. The court found that B.J. and M.W.'s actions caused the damages and that the damages were a foreseeable consequence of their actions. Looking to the amount of the award, the court cited the State Farm structural damage claim policy, which "establishe[d] that the replacement cost of the structures on the property is $999,354.74." The court awarded that amount in restitution as to the

structural damage. Regarding Slocum's vehicles, the court awarded $7,700 for his truck, $3,500 for his motorcycle, $2,500 for his Teardrop trailer. Turning to Slocum's other personal items, the court noted that Slocum requested $900,000 for the contents within the church, home, and additional structures. The court found his testimony "too speculative" to award such an amount. However, the court awarded $165,000 as that was the limit of his State Farm insurance policy on those items. The total amount of the restitution award was $1,178,054.74.

B.J. timely appealed.

ANALYSIS

I.     Restitution Award

A.     Good Cause

B.J. assigns error to the trial court's entry of an award of restitution beyond the 180-day statutory deadline. He avers the court erred in finding good cause to extend the restitution deadline from July 5 to August 3, 2022. We disagree.

"A sentencing court's restitution order will not be disturbed on appeal absent an abuse of discretion." *State v. Morgan*, 28 Wn. App. 2d 701, 703, 538 P.3d 648 (2023). "An abuse of discretion occurs if the court's decision is manifestly unreasonable or rests on untenable grounds." *State v. Griffin*, 173 Wn.2d 467, 473, 268 P.3d 924 (2012).

The sentencing court must determine the amount of restitution "at the sentencing hearing or within 180 days of sentencing unless the court extends this period for good cause." *State v. Dennis*, 101 Wn. App. 223, 229, 6 P.3d 1173 (2000); RCW 9.94A.753(1). The same is true for courts imposing restitution on

juveniles following their disposition. RCW 13.40.150(3)(f). Because the 180-day time limit is mandatory, any motion to extend it must be made within that time period. *State v. Grantham*, 174 Wn. App. 399, 403, 299 P.3d 21 (2013); *State v. Prado*, 144 Wn. App. 227, 249, 181 P.3d 901 (2008). Here, the trial court sentenced B.J. and entered the disposition on January 5, 2022. As the 180-day deadline fell on a holiday, July 4, the final date for determining restitution became July 5, 2022. CR 6(a). On July 1, 2022, the State moved to extend the restitution hearing date, and, on July 5, after a hearing on the matter, the trial court found good cause for the continuance, granted the motion, and extended the restitution deadline to August 4, 2022.

"Good cause requires a showing of some external impediment that did not result from a self-created hardship that would prevent a party from complying with statutory requirements." *State v. Reed*, 103 Wn. App. 261, 265 n.4, 12 P.3d 151 (2000). "Inadvertence or attorney oversight is not 'good cause.'" *State v. Johnson*, 96 Wn. App. 813, 817, 981 P.2d 25 (1999). In determining whether good cause exists, courts consider "the State's diligence in procuring the necessary evidence" as well as "(1) the length of the delay, (2) the reason for delay, (3) the defendant's assertion of [their] right to speedy sentencing, and (4) the extent of prejudice to the defendant." *State v. Tetreault*, 99 Wn. App. 435, 438, 998 P.2d 330 (2000).

The State sought a 30-day extension to the restitution deadline and averred there was good cause under the circumstances. The State explained that it received the loss estimates from Slocum around 4:30 a.m. on July 1, which were shared with the defense that day, and the State noted that additional

documentation needed to be "prepared, provided, and reviewed."  At the hearing

on the matter, the prosecutor further described the situation as follows:

> I can state that as far as victim impact, I have been in contact multiple times since the cases pended requesting restitution. It took quite a while for him to compile the information, because it is a fairly substantial restitution request in this case. It's an arson. It started as an arson one, they pled to reckless burning. The victim's house burnt down, as well as several cars and vehicles. So, the restitution information took a while to compile.

B.J. opposed the extension of time to set restitution and stated "[t]his motion

could have . . . been brought well . . . within the timeline.  This is not the fault of

the respondents."  In response, the prosecutor stated "we provided notice as soon

as we had notice from the victim," and "it did require quite a bit of . . . emotional

work from him.  [Slocum] was emotional at the hearing[,] discussing the loss of his

property was very difficult for him."  Further, the prosecutor noted, "[Slocum] also

indicated it just took a lot of time to get these."

After hearing from the parties, the court ruled as follows:

> This is certainly a difficult situation when we do have a statute that provides for timeliness in determining kind of the factual basis for restitution hearing. There are good reasons for that statute. The statute provides some certainty to individuals who have been convicted and/or found to have committed offenses as juveniles. That said, we also have competing interests. And in this case, I think there is good cause to continue the hearing.
> When I'm looking at good cause, I'm looking at the date of the offense, the timing of when folks came in, the resolution of the matter, which was just about 180 days ago, as well as the complexity with which to determine the restitution.
> In situations where we're involving insured structures, there— I think that takes additional time. Also, with real estate and other items, it appears that there was a complete loss potentially. A complete loss of property. That also takes some time.
> I do also find that a victim's emotional state and concern and I do have concerns about that also taking some time. That said, I appreciate counsel['s] . . . request for no more than a 30[-]day

> extension, [be]cause I do think that it is time to round this up. And so, 30 days max would be the extension time this [c]ourt would order.

This was not an abuse of discretion. First, as B.J. concedes in briefing, the trial court had authority to extend this restitution date because the State's motion was timely. Second, the record plainly reflects tenable grounds to support the court's finding of good cause. This was not a case of inadvertence or attorney oversight; rather, the evidence shows that the State attempted to obtain the materials from Slocum, but due to the severity of the damages, the numerous personal belongings lost, and the unsurprising emotional toll, Slocum did not provide the necessary documents to the State until just before the restitution deadline. While B.J. argues good cause did not exist because Slocum had an estimate from his insurance company as early as October 2021, that alone is not determinative. *See Tetreault*, 99 Wn. App. at 438. While Slocum may have had evidence at that time showing his insurance policy for $165,000 coverage on his personal property that was destroyed, Slocum explained that he was "grossly underinsured" and ultimately sought $900,000 in restitution for the contents of the church, home, and additional structures.

Contrary to B.J.'s contention, this was not "a self-created hardship" that precludes a finding of good cause. Rather, the evidence shows that B.J. and M.W. caused the destruction of an *extraordinary* amount of property (nearly an acre of land, multiple buildings, vehicles, and various collections of antiques, instruments, photographs, and family belongings) by their actions, and, though Slocum attempted to ascertain the value of the numerous items he had collected throughout his life, he was unable to provide evidence of that within the 180-day

window. There is no question that this impediment was external. *Reed*, 103 Wn. App. at 265 n.4. Furthermore, considering that the delay was for only 30 days, the specific property at issue was vast and its true value was nearly immeasurable, and prejudice, if any, suffered by B.J. was minimal, the court did not err in finding good cause to extend the restitution deadline beyond the statutory 180 days.[2] *See Tetreault*, 99 Wn. App. at 438.

### B. Easily Ascertainable Damages

B.J. next avers the restitution award was erroneous because the "amount was not based on easily ascertainable damages." Specifically, he contends the insurance appraisal report showing the value of the structures destroyed in the fire was "internally inconsistent." The record establishes otherwise.

Trial courts have discretion to determine the amount of restitution awarded. *State v. Kisor*, 68 Wn. App. 610, 619, 844 P.2d 1038 (1993). RCW 9.94A.753(3) provides that the amount of restitution "shall be based on easily ascertainable damages for injury to or loss of property." However, that "does not mean that restitution can be awarded only under simple calculations." *State v. Kinneman*, 155 Wn.2d 272, 285, 119 P.3d 350 (2005).

When a defendant disputes the amount, "the facts supporting a restitution award must be proved by a preponderance of the evidence." *State v. Deskins*,

---

[2] The State also notes that B.J. subsequently waived his right to a timely restitution hearing by requesting a 60-day extension after the trial court found good cause to extend the initial hearing to August 3, 2022. While defense counsel for the two juveniles clearly stated that they were not waiving their objection to the initial extension, B.J. did waive his right to a timely hearing thereafter. While this waiver was not necessarily inconsistent with the earlier objection, it does weigh in favor of the trial court's finding of good cause to grant the 30-day extension under the circumstances.

180 Wn.2d 68, 82, 322 P.3d 780 (2014). "Evidence is sufficient if it affords a reasonable basis to estimate the loss and does not depend on 'mere speculation or conjecture.'" *State v. Velezmoro*, 196 Wn. App. 552, 564, 384 P.3d 613 (2016) (internal quotation marks omitted) (quoting *State v. Griffith*, 164 Wn.2d 960, 965, 195 P.3d 506 (2008)). "Courts may rely on a broad range of evidence—including hearsay—because the rules of evidence do not apply to sentencing hearings." *Deskins*, 180 Wn.2d at 83.

Slocum provided his State Farm structural damage claim policy, filed in the court as exhibit 21, which was a nearly 100-page insurance appraisal that showed the value of and damage to the multiple structures on his property. According to B.J., "the document is internally inconsistent" and thus the "restitution amount was not based on easily ascertainable damages." This bare assertion is meritless and contradicted by the record. The insurance document provides that the total replacement values for the "Dwelling" and "Dwelling Extension" were $373,169.10 and $626,185.64, respectively, for a total of $999,354.74. In accordance with the document, the trial court awarded $999,354.74 in replacement costs. Because the document is neither inconsistent nor based on "mere speculation or conjecture" and it gives a reasonable basis to estimate the damages to Slocum's property, the evidence is sufficient.[3] *Velezmoro*, 196 Wn. App. at 564.

---

[3] B.J. also contends that the restitution award violated his "due process rights because B.J. was afforded no opportunity to rebut the evidence or cross-examine its internal inconsistency." B.J. cites to one page of the document that provides estimates for a portion of the structural repair and replacement costs, but that amount does not, as B.J. contends, represent the entire amount of losses from the multiple structures that were destroyed. Again, the State Farm insurance estimate addressed both the "Dwelling" and "Dwelling Extension" and the total replacement value provided was based on the aggregate of those two. There is no internal inconsistency.

Second, B.J. relies on a distinguishable case for his bald "due process" claim, *State v. Kisor*. In *Kisor*, the defendant challenged the amount of the restitution award because it was "based

C.      Interest on Restitution

B.J. also contends the court erred in not exercising discretion to waive interest on the restitution award.

In 2022, the legislature amended the statute governing interest on restitution and added subsection RCW 10.82.090(2), which gives trial courts discretion to waive interest on restitution. *State v. Ellis*, 27 Wn. App. 2d 1, 15, 530 P.3d 1048 (2023). Though this provision took effect after B.J. was sentenced, it applies now as his case is on direct appeal. *Id.* at 16. Accordingly, we remand for the trial court to determine whether to waive interest on the restitution award after considering the relevant factors included in RCW 10.82.090(2). *See State v. Reed*, 28 Wn. App. 2d 779, 781, 538 P.3d 946 (2023).

II.      DNA Collection Fee

Finally, B.J. asks that we remand his case with an order to strike the DNA collection fee from his disposition. The State concedes this is appropriate.

After B.J. was sentenced, the legislature eliminated the mandatory DNA collection fee. *Ellis*, 27 Wn. App. 2d at 17. While this amendment took effect subsequent to B.J.'s sentencing, it applies to cases on direct appeal. *Id.* Thus, we remand for the trial court to strike the DNA collection fee from B.J.'s disposition.

---

solely upon the State's affidavit," which reflected one witness's statement as to the cost of purchasing and training a new dog and "there was no indication of where [that witness] obtained the figures as to the cost of purchasing the animal and training it." 68 Wn. App. at 620. Accordingly, the court found that the affidavit was not substantial credible evidence of restitution and held that violated due process. *Id.*

Here, however, there is an extensive report presented by the State in which State Farm provided a detailed analysis of the property value and damage resulting from the fire. Because substantial credible evidence supported the award of restitution, B.J.'s due process argument fails.

Affirmed in part, but remanded for further proceedings consistent with this opinion.

WE CONCUR: