[Nos. 35140-1-I; 35141-9-I. Division One. May 1, 1995.]

THE STATE OF WASHINGTON, *Petitioner*, v. SIMON P. ROBERTS, ET AL, *Respondents*.

*James H. Krider, Prosecuting Attorney,* and *Seth Aaron Fine, Deputy,* for petitioner.

*Richard Tassano* of *Washington Appellate Project,* for respondents.

BECKER, J. — At issue is an order postponing the sentencing of Simon Roberts and Adrian Guthrie while they undergo tribal banishment in Alaska. Implicit in the order is the assumption that the young men may thereby avoid the prison terms the law would otherwise impose. Because an offender's

conduct after the crime cannot justify an exception to a standard sentence, and because a court may not delay sentencing to see if the law will change, the order of continuance must be vacated.

## I

On the night of August 31, 1993, Roberts and Guthrie carried out a plan to attack and rob a pizza delivery man. While Guthrie engaged the man in conversation, Roberts struck him from behind with a baseball bat. As the victim lay on the ground with a fractured skull, the 16-year-old assailants took $40 in cash, a beeper, and a pizza. The two later pleaded guilty to charges of first degree robbery. Neither had a record of prior felony offenses. Under Washington's Sentencing Reform Act of 1981, the standard sentence for Guthrie's offense is between 31 and 41 months of total confinement. With additional time for using a deadly weapon, the standard range for Roberts' offense is 55 to 65 months.

Roberts and Guthrie are members of the Thlawaa Thlingit Nation, an Alaskan native tribe. After hearing about the crime, some members of the tribe contacted the Snohomish County Superior Court and offered to punish the offenders by banishing them to remote islands off the coast of Alaska. Tribal members believed this alternative to the State's punishment would be more likely to steer the young men away from a life of crime and reincorporate them into their traditional culture. At sentencing, Roberts and Guthrie asked the trial court to depart from normal sentencing practice by imposing an exceptional sentence of 12 months, to be served under tribal supervision.

The trial court recognized that there was no basis under the controlling statute for a reduced sentence. Searching for a way to reconcile the tribe's banishment proposal with the mandates of the Washington law, the trial court offered to release Roberts and Guthrie to the tribe during an 18-month continuance of the sentencing hearing. The continuance "would give the boys additional time to rehabilitate themselves and mature, even if it's in preparation for the punishment phase of their sentence." The court also explained that

delaying the imposition of a sentence would give the courts and the Legislature time to "clarify" the law. "If the courts . . . [and] the legislature [are] willing to consider treatment alternatives for violent offenders, this would give them a year-and-a-half to so declare."

The court presented the continuance proposal to Roberts and Guthrie as follows:

> You have each heard the proposal that we've been discussing which would postpone sentencing in this case for 18 months. Understanding that when you would return 18 months later, that you would still be facing the same term in the state penitentiary as provided by law. But there is a chance that the legislature will by that time have modified the Court's authority to deviate from that state sentence; and there's a chance that you will have proven yourselves sufficiently in the interim to give me a factual reason to deviate that I don't now have. But that's all chancey. There's still the very realistic possibility that after 18 months you would return to this courtroom and be facing somewhere in the neighborhood of three to five years in the penitentiary.

Roberts and Guthrie confirmed that they understood, but still wished to have the sentencing postponed. The court then continued the sentencing for 18 months. The order of continuance requires Roberts and Guthrie to participate in programs ordered by the Thlingit court "for the purpose of punishing and rehabilitating the Defendant[s], and providing restitution to the victim of [their] crime". At the close of proceedings, the court told Roberts and Guthrie:

> There's a lot of pressure on you from the skeptics and from the tribal members who have assisted you in this matter for you to succeed. I am going to be watching you, as well, and in 18 months from now I am going to be very interested in hearing the reports on whether you have in fact succeeded in becoming rehabilitated and in providing restitution to the victim. I certainly send my best wishes, but I want you to understand there's a lot of pressure, and the pressure is going to be on you fellows to succeed at this.

This court granted the State's request for discretionary review of the continuance order. On appeal, the State asks this court to vacate the continuance and require the trial court to order Roberts and Guthrie back from Alaska for immediate sentencing under the State's sentencing guidelines.

## II

Felony sentencing in Washington is governed by the Sentencing Reform Act of 1981 (SRA).[1] Legislatively approved ranges define the appropriate sentences for each crime, leaving trial courts with limited discretion at sentencing.[2]

The State first contends that the trial court violated the mandates of the SRA by deferring the sentencing hearing. Before the adoption of the SRA, courts were authorized to defer felony sentencing for a probationary term.[3] If the defendant satisfied the conditions of probation, the court could dismiss the charges.[4] The SRA prohibits this practice.[5] The State argues that the trial court's order here amounts to an order of probation because it imposes conditions on Roberts and Guthrie during their release.

Present law allows the trial court to impose conditions whenever it releases a defendant prior to sentencing.[6] The distinguishing feature of deferred sentencing, as opposed to presentence release, is the prospect that the defendant will avoid a prison sentence by complying with the court's conditions.[7] The trial court here explicitly refused to condition its future disposition of the case upon compliance by Roberts and Guthrie. The court explained:

> What the proposition is in this case is not to announce a particular sentence, not to put the defendants on probation with a list of conditions that they must comply with or be subject to serving the sentence. But, instead, to keep all of the Court's options wide open by simply continuing the sentencing hearing for 18 months and saying that anything goes in March, 1996. . . . There have been no conditions that you had to meet to gain mitigation. We are back to square one, Mr.

---

[1]RCW 9.94A.010 et seq.

[2]RCW 9.94A.120.

[3]RCW 9.95.200 et seq. See generally State v. Davis, 56 Wn.2d 729, 355 P.2d 344 (1960); State v. Parsley, 73 Wn. App. 666, 870 P.2d 1030 (1994).

[4]RCW 9.95.240.

[5]RCW 9.94A.130.

[6]See CrR 7.2(a); 3.2.

[7]See Davis, at 730; RCW 9.95.240.

Guthrie and Mr. Roberts. You now will face the SRA and the possibility of going to the penitentiary as previously. I think that's a distinction with a difference. I conclude that this is a continued sentencing hearing and is not a deferred imposition of sentence.

■ We cannot say that the trial court has engaged in the prohibited practice of deferred sentencing unless or until the court actually uses Roberts' or Guthrie's behavior during the 18-month period as a basis for deviating from the sentencing guidelines. Thus, the State prematurely directs its argument at something the court might do — *i.e.,* impose a reduced sentence — rather than at something the court has already done. To characterize the order as an unlawful deferred sentence at this point would be to "render an advisory opinion on a record which has yet to be completed."[8] This we decline to do.

■ We also reject the State's argument that the trial court improperly based its order on the Defendants' race, nationality, or wealth. We agree these considerations must not enter into the selection of the appropriate sentence.[9] But we find no authority prohibiting the trial court from considering a defendant's personal characteristics in continuing a sentencing hearing or imposing conditions for release. To the contrary, the criminal rules authorize the court to consider such analogous factors as whether there are responsible persons to whose custody a defendant may be released; whether a defendant's connections to the community make flight improbable; and whether a bond will serve as security for the defendant's return.[10]

The State also contends that the court's order unlawfully subjects Roberts and Guthrie to punishment by an entity other than the State. This argument misconstrues what happened at the hearing. Roberts and Guthrie voluntarily submitted to tribal punishment. Had they not agreed to sub-

---

[8]*State v. Buckner,* 74 Wn. App. 889, 899, 876 P.2d 910 (1994), *rev'd on other grounds,* 125 Wn.2d 915, 890 P.2d 460 (1995).

[9]RCW 9.94A.340.

[10]*See* CrR 3.2.

mit the court was without power to order it. Tribal punishment in this context is no more an extension of the State's power than is the punishment that other young defendants may experience when released into parental custody.

## III

■ ■ Having rejected the arguments directly advanced by the State on appeal, we nevertheless conclude that the order of continuance must be set aside. Ordinarily, this court limits its review to the issues framed by the parties. But this rule is "not inexorable"; it may give way where broader consideration of the issues is necessary "to serve the ends of substantial justice".[11] The court's order allows Roberts and Guthrie to hope they can avoid state prison if they endure 18 months of wilderness isolation. If this hope is illusory, they are entitled to find out now, rather than next year. While we sometimes request additional briefing before considering an issue not raised by the appellant,[12] it is unnecessary to do so here. Roberts and Guthrie have briefed the issue we consider below; since we ultimately decide in favor of the State, the absence of briefing from the State is not prejudicial.[13]

■ ■ "When a person is convicted of a felony, the court *shall* impose punishment".[14] Normally, the court holds a sentencing hearing within 40 days following the conviction.[15] The court may extend this time period "for good cause shown".[16]

---

[11]*Maynard Inv. Co. v. McCann,* 77 Wn.2d 616, 622, 465 P.2d 657 (1970) (quoting 5 Am. Jur. 2d *Appeal and Error* §§ 548, 549, 551 (1962)).

[12]RAP 12.1(b); *Hanson v. Snohomish,* 121 Wn.2d 552, 557, 852 P.2d 295 (1993).

[13]*See Alverado v. WPPSS,* 111 Wn.2d 424, 759 P.2d 427 (1988), *cert. denied,* 490 U.S. 1004, 104 L. Ed. 2d 153, 109 S. Ct. 1637 (1989).

[14](Italics ours.) RCW 9.94A.120.

[15]At oral argument, the State argued for the first time that article 4, section 20 of the state constitution forbids any continuance of more than 90 days. This provision does not apply where, as here, the court has ordered a rehearing. *See Phillips v. Phillips,* 52 Wn.2d 879, 884, 329 P.2d 833 (1958).

[16]RCW 9.94A.110.

The trial court has broad discretion to determine whether there is good cause to postpone sentencing.[17] The court abuses this discretion, however, if it bases the delay on untenable grounds.[18]

The court in this case identified several reasons for delaying the imposition of sentence. One reason was to offer Roberts and Guthrie an opportunity to improve themselves. Given their youth, the court concluded the delay would be beneficial in giving them time to mature before serving their sentence.

So long as a lawful sentence is ultimately imposed, the SRA does not preclude a court from delaying sentencing for reasons peculiar to the offender. The State agrees that various personal factors do sometimes constitute good cause for delay. In this case, we would be inclined to view the continuance as within the permissible bounds of discretion if its *sole* purpose were to allow Roberts and Guthrie to complete what is essentially a rigorous voluntary program of reflection and atonement.

But the court articulated other purposes that we may not countenance. First, the court informed Roberts and Guthrie, "there's a chance that you will have proven yourselves sufficiently in the interim to give me a factual reason to deviate that I don't now have." This statement, and the court's comment that it would be "watching" the young men and following their progress, implied that their successful rehabilitation could justify a departure from the sentencing guidelines.

■ The sentencing guidelines apply "equally to offenders in all parts of the state, without discrimination as to any element that does not relate to the crime or the previous record of the defendant."[19] A defendant's good conduct following the commission of a crime is not a factor which relates to the crime itself or the defendant's criminal record. Therefore, it is not an appropriate factor to consider in sentencing. By

---

[17]*State v. Garibay*, 67 Wn. App. 773, 776-77, 841 P.2d 49 (1992).

[18]*State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

[19]RCW 9.94A.340.

suggesting that the Defendants might receive leniency because of their experience in Alaska, the court misstated the law.

Second, the court said its order would serve the purpose of allowing sufficient time for the Legislature or the appellate courts to change the law. Trial courts have been known to chafe at the SRA's systematic approach because it tends to limit their discretion to do justice, as they see it, in a single case. Our responsibility as an appellate court is to ensure that trial courts apply the SRA as written.[20] The trial court here referred to this court's recent decision in *State v. Freitag*[21] as an indication that the appellate courts might be moving toward allowing broader consideration under the SRA of "who the defendants are and not simply the circumstances of the crime". In *Freitag*, the court held that a lack of predisposition to commit the crime may be a mitigating factor in sentencing a defendant who has no criminal history. This holding is consistent with the requirements of RCW 9.94A.340, as a lack of predisposition to commit the crime may be a factor relating to the crime itself. *Freitag* does not authorize a more general consideration of "who the defendants are". At present, the statute, the sentencing guidelines, and the case law all unambiguously require that Roberts and Guthrie serve time in state prison.

One reasonably expects that the prescribed standard sentence ranges will fluctuate over time as the Legislature weighs the cost and effectiveness of various alternatives. But the court may not encourage defendants in a given case to treat sentencing law like a stock market, waiting for the opportune moment to get in. It is an abuse of trial court discretion to delay criminal sentencing on the hope that the Legislature or appellate courts will someday change the law.

In sum, two of the bases relied upon by the trial court in continuing sentencing are untenable. We do not know whether

[20]*See State v. Harper*, 62 Wn. App. 69, 78, 813 P.2d 593 (1991), *review denied*, 118 Wn.2d 1017 (1992).

[21]74 Wn. App. 133, 873 P.2d 548 (1994).

the Defendants would voluntarily agree to submit to tribal banishment once it is made clear to them that they cannot, in the end, avoid serving the same prison sentence that other first-time offenders must serve for the same crime. And we do not know whether the trial court would exercise its discretion in the same manner if it did not consider the impermissible factors.[22]

Accordingly, we vacate the order of continuance. This case is remanded to the trial court for further proceedings not inconsistent with this opinion. Our decision does not preclude Roberts and Guthrie from renewing their motion for continuance, so long as they act with full knowledge that following the period of banishment, a standard range prison sentence inescapably awaits them.

BAKER, C.J., and KENNEDY, J., concur.

Reconsideration denied May 24, 1995.

[22]*See State v. Gaines*, 122 Wn.2d 502, 517, 859 P.2d 36 (1993).