[No. 31371-5-II.   Division Two.   March 30, 2005.]

THE STATE OF WASHINGTON, *Respondent*, v. SEMI OSMAN, *Appellant*.

*Stephanie C. Cunningham*, for appellant.

*Gerald A. Horne, Prosecuting Attorney, Kathleen Proctor, Deputy*, and *Peter J. Mullenix, Legal Intern*, for respondent.

¶1 VAN DEREN, J. — Semi Osman pleaded guilty to three counts of second degree incest. On appeal, he alleges that the trial court (1) procedurally violated RCW 9.94A.340 and (2) violated his equal protection rights when it considered his status as a noncitizen and his possible deportation status in denying his Special Sex Offender Sentencing Alternative (SSOSA) request. We find no abuse of discretion or equal protection violation and affirm.

## FACTS

¶2 Semi Osman requested a SSOSA sentence after pleading guilty to three counts of second degree incest. Former RCW 9A.64.020(2) (1999). The State opposed the SSOSA based on information that Osman, a noncitizen, could be deported if released from State custody and, therefore, would not receive treatment.

¶3 The parties disputed the likelihood that the United States Department of Immigration and Customs Enforcement (ICE) would deport Osman if he were released after six months of incarceration to complete SSOSA treatment and whether treatment or counseling would be available to Osman through the Department of Corrections if the court sentenced Osman to prison.

¶4 The State's evidence indicated that the ICE would hold Osman for potential deportation upon his release from custody for purposes of the treatment portion of a SSOSA sentence. The State argued that if Osman were deported, he would not complete any treatment nor would he be sufficiently punished.

¶5 Osman responded that it was unlikely that he would be deported because he was not a citizen of any country.[1] He also asserted that treatment would not be available to him in prison because of his noncitizen status. Thus, the only way for him to receive treatment would be through a SSOSA.

¶6 The court denied Osman's request for a SSOSA and sentenced him to 51 months, the low end of the standard range. This timely appeal followed.

¶7 On appeal, Osman asserts that the trial court failed to comply with the procedural requirements of RCW 9.94A.340 and violated his equal protection rights when it denied his SSOSA request and imposed a standard range sentence.

## ANALYSIS

■ ¶8 A defendant may appeal a standard range sentence only if it (1) fails to comply with the procedural requirements of the Sentencing Reform Act of 1981 (SRA)[2] or (2) raises a constitutional issue. Former RCW 9.94A-.210(1) (1989);[3] *State v. Mail*, 121 Wn.2d 707, 711-13, 854 P.2d 1042 (1993).

> In . . . order for a "procedural" appeal to be allowed . . . it must be shown that the sentencing court had a duty to follow some specific procedure required by the SRA, and that the court failed to do so. Without such a showing, the clear rule of RCW 9.94A.210(1) applies and the appeal will be denied.

*Mail*, 121 Wn.2d at 712.

### DENIAL OF SSOSA UNDER RCW 9.94A.340

¶9 Osman first asserts that the trial court violated the SRA when it considered his noncitizen status in denying

---

[1] Osman was born in Sierra Leone and is a British National. He is not a citizen of either country.

[2] Chapter 9.94A RCW, Sentencing Reform Act of 1981.

[3] Recodified as RCW 9.94A.585 by LAWS OF 2001, ch. 10, § 6.

his SSOSA request. The State responds that this is not a violation of the SRA and, thus, is not reviewable.

¶10 A sentence within the standard range is not appealable. Former RCW 9.94A.210(1). When the defendant contends solely that the trial court abused its discretion in rejecting a SSOSA request, the sentence is not appealable. *State v. J.W.*, 84 Wn. App. 808, 811, 929 P.2d 1197 (1997) (citing *State v. Onefrey*, 119 Wn.2d 572, 574 n.1, 835 P.2d 213 (1992)).

¶11 Here, the court concluded that Osman was eligible for a SSOSA based on the reports it received for sentencing. Osman argues that in the exercise of its discretion after determining his eligibility, the trial court erred procedurally when it considered his noncitizen status in denying his SSOSA request.

¶12 RCW 9.94A.340 states: "The sentencing guidelines and prosecuting standards apply equally to offenders in all parts of the state, without discrimination as to any element that does not relate to the crime or the previous record of the defendant." Factors such as race, nationality, or wealth "must not enter into the selection of the appropriate sentence." *State v. Roberts*, 77 Wn. App. 678, 683, 894 P.2d 1340 (1995).

¶13 But in determining whether a SSOSA is appropriate, the court also must consider "whether the offender and the community will benefit from use of this . . . alternative." Former RCW 9.94A.120(8)(a)(ii) (2000).[4] The court is also directed to consider the "offender's social and employment situation," his "amenability to treatment," and his "relative risk to the community." Former RCW 9.94A.120(8)(a)(i).[5]

---

[4] Recodified as RCW 9.94A.670(4) by Laws of 2000, ch. 28, § 20. According to the plea agreement, the amended information, and the presentence investigation report, Osman committed first degree child molestation on June 1, 3, and 5, 2001. But due to an apparent scrivener's error, the judgment and sentence shows the offenses occurred on June 1, 3, and 5, *2003*. RCW 9.94A.670, cited in the State's brief, did not become effective until July 1, 2001.

[5] Similar language currently appears in RCW 9.94A.670(3)(a), (b).

¶14 Furthermore, the court's exercise of discretion in making a SSOSA determination is not limited to consideration of the factors set out in the SSOSA statute. *State v. Frazier*, 84 Wn. App. 752, 753, 930 P.2d 345 (1997). And criminal rules authorize the court to consider whether a defendant's connections to the community and family ties make him a likely flight risk. *Roberts*, 77 Wn. App. at 683.

¶15 Here, the court considered whether Osman's particular status as a noncitizen created the potential for deportation which would render a SSOSA sentence unworkable. It resolved that the SSOSA sentence was not appropriate because it would not guarantee that Osman would receive either punishment or treatment. The court's analysis did not consider Osman's nationality or race. Instead, it focused on whether Osman would be able to fulfill the SSOSA requirements. The court did not commit procedural error under the SRA.

EQUAL PROTECTION

¶16 Osman also asserts that the court's consideration of his immigration or deportation status in sentencing violated equal protection principles of the "State and Federal Constitutions." Br. of Appellant at 4-5. He contends that the court administered RCW 9.94A.340 in a manner that unjustly discriminates against similarly situated persons.

¶17 The federal constitution requires that no state shall make or enforce any law that denies "to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. The Washington Constitution provides that "[n]o law shall be passed granting to any citizen [or] class of citizens . . . which upon the same terms shall not equally belong to all citizens."[6] WASH. CONST. art. I, § 12. Thus, " 'persons similarly situated with

---

[6] Because the equal protection clause of the federal constitution and the privileges and immunities clause of the Washington constitution are substantially identical, they are considered under the same analysis. *State v. Garcia-Martinez*, 88 Wn. App. 322, 326, 944 P.2d 1104 (1997); *State v. Shawn P.*, 122 Wn.2d 553, 559-60, 859 P.2d 1220 (1993); *but see Griffin v. Eller*, 130 Wn.2d 58, 64-65, 922 P.2d

respect to the legitimate purpose of the law receive like treatment.' " *State v. Phelan*, 100 Wn.2d 508, 512, 671 P.2d 1212 (1983) (quoting *Harmon v. McNutt*, 91 Wn.2d 126, 130, 587 P.2d 537 (1978)). And the equal protection clauses apply to noncitizens and citizens. *Graham v. Richardson*, 403 U.S. 365, 371-72, 91 S. Ct. 1848, 29 L. Ed. 2d 534 (1971).

¶18 But the equal protection clauses do not require " 'that all persons be dealt with identically' " or that the impact from similar treatment be identical. *In re Det. of Thorell*, 149 Wn.2d 724, 745, 72 P.3d 708 (2003) (quoting *Baxstrom v. Herold*, 383 U.S. 107, 111, 86 S. Ct. 760, 15 L. Ed. 2d 620 (1966)), *cert. denied*, 541 U.S. 990 (2004); *Salstrom's Vehicles, Inc. v. Dep't of Motor Vehicles*, 87 Wn.2d 686, 695, 555 P.2d 1361 (1976).

¶19 For purposes of an equal protection analysis, if the legislature creates a classification based on certain characteristics of an offender, we determine whether the appropriate standard of review is strict scrutiny, intermediate scrutiny, or the rational basis test, depending on the nature of the interest affected by the law and the characteristics of the legislatively created class. *State v. Shawn P.*, 122 Wn.2d 553, 560, 859 P.2d 1220 (1993).

¶20 Under the rational relationship test, the law is subjected to minimal scrutiny and will be upheld " 'unless it rests on grounds wholly irrelevant to the achievement of a legitimate state objective.' " *State v. Smith*, 117 Wn.2d 263, 277, 814 P.2d 652 (1991) (quoting *Phelan*, 100 Wn.2d at 512). Under the strict scrutiny test, the law will be upheld only if it is shown to be necessary to accomplish a compelling state interest in order to be upheld. *Smith*, 117 Wn.2d at 277 (citing *State v. Schaaf*, 109 Wn.2d 1, 17, 743 P.2d 240 (1987)); *Phelan*, 100 Wn.2d at 512. Under the intermediate or heightened scrutiny test, the challenged law must be seen as furthering a substantial interest of the State.

788 (1996) (the extent to which the constitutional guaranties in article I, section 12 exceed those under the Fourteenth Amendment remains an open question).

*Smith*, 117 Wn.2d at 277 (citing *Schaaf*, 109 Wn.2d at 17); *Phelan*, 100 Wn.2d at 512).

¶21 Osman argues that strict scrutiny applies because he was classified by his noncitizen status, which is a suspect class. *Graham*, 403 U.S. at 371-72; *Smith*, 117 Wn.2d at 277.

■■■ ¶22 Success under any of the articulated tests requires that Osman first establish a challenged classification. But the record does not support Osman's assertion that the trial court used his noncitizen or possible deportation status to deny his request for a SSOSA and the challenged statute does not create a classification based on noncitizenship. RCW 9.94A.340 expressly prohibits discrimination based on any characteristic not related to the crime or the defendant's previous record. Therefore we do not undertake further equal protection analysis of RCW 9.94A.340.

¶23 In considering whether to grant a SSOSA, the sentencing court was entitled to rely on both RCW 9.94A.340 and on the criteria in former RCW 9.94A.120 and CrR 3.2(c). These provisions required the court to consider the defendant's social and employment situation, the relative risk to the community, whether he and the community would benefit from the court's application of the SSOSA sentence, and his flight risk given his connections to the community and family ties.

¶24 Here, the trial court's application of the statute and court rules does not reflect any equal protection violation. Instead, the court's decision reflects a measured analysis of whether the purposes of SSOSA would have been achieved by applying it to Osman. As part of its analysis, the court considered Osman's ability to remain in the country to complete the treatment portion of SSOSA. Nothing about the statute, court rule, or the court's decision runs contrary to Osman's equal protection rights under the Fourteenth Amendment, the privileges and immunities clause of the Washington Constitution, the legitimate state objectives of

584

the SRA, or the legislative concerns and interests in properly applying the SSOSA.

¶25 We therefore affirm the trial court's sentence.

QUINN-BRINTNALL, C.J., and HUNT, J., concur.

Review granted at 155 Wn.2d 1021 (2005).