FILED
COURT OF APPEALS
DIVISION II

2014 APR -1 AM 9: 23

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>　　　　　　　Respondent,<br><br>v.<br><br>ANTWANE GOOLSBY,<br><br>　　　　　　　Appellant. | No. 43467-9-II<br><br><br><br>UNPUBLISHED OPINION |

HUNT, P.J. — Antwane Goolsby appeals his jury trial convictions for first degree premeditated murder, first degree felony murder, and unlawful possession of a firearm and the jury's special verdicts finding the presence of two gang aggravators. Goolsby argues that the trial court's "to convict" instructions violated his right to a jury trial and the evidence is insufficient to support the jury's special verdicts findings. We affirm.

## FACTS

### I. MURDER AND UNLAWFUL FIREARM POSSESSION

Antwane Goolsby is a member of the "Neighborhood Compton Crips" street gang. 7 Verbatim Report of Proceedings (VRP) at 390. Goolsby recruited 19-year-old Lawrence McWilliams to join this gang, initiation into which required McWilliams to engage in a street fight. After McWilliams' initiation, Rauwn Bernard drove them to Bernard's girlfriend's residence in Tacoma. While there, both Bernard and McWilliams saw Goolsby carrying a gun.

That evening, Goolsby received a call from the mother of his two children, Alishya Breedlove, who had been at her friend Tiffany Hawkins' 30th birthday party in Tacoma with some 24 other people. As the party was winding down, Breedlove received a call from her friend Rachel Williams and drove to the Walgreens at 38th and Pacific Avenue to pick her up.

Riding with Breedlove to pick up Williams were five or six men, including one that she knew as "No Good," whose real name she believed was "James." 6 VRP at 334. On the way back to Hawkins' house, one of Breedlove's male passengers (not the victim, James Smith) started "acting crazy," walking around inside her van, and blocking her rear view. 6 VRP at 336. Breedlove asked the man to stop, but he refused. As the men became louder, Breedlove warned them that she was going to call Goolsby. Eventually Breedlove did call Goolsby and asked him to help get the men out of her van. But when she arrived back at Hawkins' house, everyone got out of her van without major incident. And by the time Goolsby arrived with Bernard and McWilliams, Breedlove was no longer having problems with the men.

As Breedlove and Williams were leaving Hawkins' house, Breedlove spoke to Goolsby from her van. When Goolsby asked Breedlove where the men that had bothered her were, she pointed to the group of men standing on the sidewalk but told Goolsby not to worry about it. James Smith was among the group of men. Nevertheless, Bernard then drove Goolsby and McWilliams to the group of men. Goolsby gave McWilliams one of his ski masks, and they both put them on.

Goolsby then exited the car armed with a pistol. As he approached Smith, the other two men ran off. According to McWilliams, all three were members of the "Hilltop Crip[s]" street gang. 7 VRP at 446. Goolsby began arguing with Smith, who said, "[I]t's Hilltop Crip and ef

you." 7 VRP at 448. Goolsby ordered Smith to "skin down," which means "give up everything you got or you might die. You might get shot." 8 VRP at 487. Goolsby grabbed Smith by his collar and pointed the gun at his head. Goolsby called McWilliams over to rob Smith, who was unarmed. According to Bernard, as Smith tried to run, Goolsby shot him in the head, firing seven to eight shots; according to McWilliams, Smith took off running and Goolsby chased after him, emptying his entire clip shooting at Smith. After Goolsby shot him, Smith fell to the ground, twitched, and stopped moving.

Medical examiner Jacquelyn Morhaime later determined that Smith had been shot five times in the back and arm. FBI agents eventually arrested Goolsby and McWilliams in Las Vegas several weeks later.

## II. PROCEDURE

The State charged Goolsby with premeditated first degree murder (count 1) (RCW 9A.32.030(1)(a)), with a firearm sentencing enhancement; felony first degree murder, also with a firearm sentencing enhancement (count 2) (RCW 9A.32.030(1)(c)); and first degree unlawful possession of a firearm (count 3) (RCW 9.41.040)[1]. The State added two RCW 9.94A.535(3)(aa) and RCW 9.94A.535(3)(s) gang aggravating circumstances to all counts.[2] The trial court granted Goolsby's motion to proceed *pro se* and later reconfirmed Goolsby's election after an extended colloquy.

---

[1] The legislature amended RCW 9.41.040 in 2011. The amendments did not alter the statute in any way relevant to this case; accordingly, we cite the current version of the statute.

[2] The legislature amended RCW 9.94A.535 in 2010, 2011 and 2013. The amendments did not alter the statute in any way relevant to this case; accordingly, we cite the current version of the statute.

In all of its "to convict" instructions, the trial court included the following language:

> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.
>
> On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

Clerk's Papers (CP) at 368 (Jury Instruction 19), 371 (Jury Instruction 22), 372 (Jury Instruction 23), 373 (Jury Instruction 24). Goolsby objected to some of the jury instructions, but he did not object to the "to convict" instructions use of the language about the "duty to return a verdict of guilty."

The jury returned verdicts of guilty on (count 1) premediated first degree murder, (count 2) felony first degree murder, and (count 3) first degree unlawful possession of a firearm. The jury also returned special verdicts finding that Goolsby (1) had been armed with a firearm during the commission of the murder (counts 1 and 2); and (2) had committed the crimes charged in counts 1, 2, and 3 "to obtain or maintain his . . . membership or to advance his . . . position in the hierarchy of an organization, association, or identifiable group" and with intent to "cause . . . benefit, aggrandizement, gain, profit . . . to or for a criminal street gang, [in] its reputation, influence, or membership[.]" CP at 387-392; *see also* RCW 9.94A.535(3)(aa); RCW 9.94A.535(3)(s).

At sentencing, the trial court did not adopt the jury's gang aggravator findings and did not impose an exceptional sentence based on these aggravators. Instead, the trial court found that this murder constituted Goolsby's "third strike," making him a persistent offender, and sentenced him to life in prison without parole under RCW 9.94A.570. Goolsby appeals his convictions and the jury's special verdict gang aggravator findings.

4

## ANALYSIS

### I. "To Convict" Instruction

Goolsby argues that the trial court's "to convict" instructions violated his constitutional right to a jury trial because they told the jury that if it found each element of a crime proved beyond a reasonable doubt, the jury had a "duty" to return a verdict of guilty. *See, e.g.*, CP at 368 (Jury Instruction 19). Goolsby argues that because there is no "'duty'" to convict under the state or federal constitutions, this instruction affirmatively misled the jury about its power to acquit. Br. of Appellant at 16 (citations omitted). We do not address Goolsby's argument because he failed to object below on the grounds he now attempts to raise for the first time on appeal and does not meet the RAP 2.5(a)(3) exception to this preservation requirement.[3]

### II. Gang Aggravator Findings

Goolsby also argues that the jury erroneously returned special verdicts, finding the presence of two gang related aggravating factors, because (1) the State did not present sufficient evidence that he committed the charged offenses in order to advance or maintain his position in a criminal street gang and/or to benefit a criminal street gang or that his crimes were gang

---

[3] We note, however, that even were we to address the merits of this argument, Goolsby would lose because we have previously held that this "duty language" in the Washington Pattern Jury Instructions was not error, *State v. Davis*, 174 Wn. App. 623, 640-41, 300 P.3d 465, *review denied*, 178 Wn.2d 1012 (2013) (upholding a trial court's "to convict" instructions, which advised the jury that it had a 'duty' to convict if it found the elements of the charged crimes proved beyond a reasonable doubt); *State v. Brown*, 130 Wn. App. 767, 770-71, 124 P.3d 663 (2005) (same); *State v. Bonisisio*, 92 Wn. App. 783, 793-94, 964 P.2d 1222 (1998) (same). We decline Goolsby's invitation to reconsider our previous decisions. *See also* Division One's recent opinion in *State v. Moore*, ___ Wn. App. _____, 318 P.3d 296 (2014), which similarly upholds the very language that Goolsby attempts to challenge here.

motivated[4]; (2) gang membership alone cannot justify an exceptional sentence; and (3) generalized statements fail to satisfy the State's burden to prove the gang aggravators beyond a reasonable doubt. Goolsby's argument lacks merit because the trial court did not adopt the jury's special verdict gang aggravator findings and did not impose an exceptional sentence based on gang aggravators.

As Goolsby acknowledges, there is presently no gang-aggravated sentence for us to review. Nevertheless, he urges us to address his sufficiency challenge because

> [i]f in the future the "three strikes" law under which Goolsby was sentenced is repealed or overturned, it is possible that Goolsby will be resentenced using a regular offender score and standard range. In that circumstance, the State might be able to request an exceptional sentence based on the jury's findings.

Br. of Appellant at 15. This argument is based on speculation about what *might* happen in the future, a possibility that is not ripe for our consideration now. Moreover, our resolution of this issue on the merits would constitute an improper advisory opinion. *See State v. Eggleston*, 164 Wn.2d 61, 76-77, 187 P.3d 233 (2008) (declining to reach issue concerning proceedings on remand because it was speculative whether the issue would actually arise); *State v. Davis*, 163 Wn.2d 606, 616-17, 184 P.3d 639 (2008) (declining to reach issue that *might* arise at resentencing); *see also State v. Roberts*, 77 Wn. App. 678, 683, 894 P.2d 1340 (1995) (declining to render opinion on a sentencing deviation the trial court *might* adopt). Therefore, we do not

---

[4] *See also* RCW 9.94A.535(3)(aa); RCW 9.94A.535(3)(s).

No. 43467-9-II

further address this argument.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Hunt, P.J.

We concur:

_____
Bjorgen, J.

_____
Maxa, J.