IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 82677-8-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| SUSNIOS, THOMAS, | ) | UNPUBLISHED OPINION |
| DOB: 11/24/1994, | ) | |
| | ) | |
| Appellant. | ) | |

BOWMAN, J. — Thomas Susnios appeals his standard-range sentence, arguing the court improperly commented on race and failed to consider meaningfully his request for an exceptional sentence down. The record does not support his claims. Susnios also argues the sentencing court erroneously imposed a 60-month mandatory minimum term of confinement and supervision fees. We agree and remand for the court to strike those provisions from Susnios' judgment and sentence.

FACTS

Susnios is a young Black man who suffers from schizophrenia. One morning in January 2019, Susnios texted his mother like he did most days to tell her that he was driving to attend a prayer service. But, instead, he drove to the Everett Police Department South Precinct parking lot and purposefully crashed into a patrol car driven by Officer Jared Corson. After the collision, Officer Corson and Susnios got out of their cars and Susnios started screaming at Officer Corson.

Citations and pin cites are based on the Westlaw online version of the cited material.

Officer Ryan Greely was in his patrol car directly in front of the collision. He also got out of his car and approached Susnios. Susnios struck Officer Greely and repeatedly yelled, " 'I'm going to kill you.' " Officer Greely tackled and arrested Susnios. Police took Susnios to the hospital where he told a nurse he was driving to attend prayer service, but he said nothing about the collision. Susnios did not recall events before the crash or anything about the crash itself.

The State charged 24-year-old Susnios with first degree assault of Officer Corson, first degree malicious mischief, and third degree assault of Officer Greely. Susnios pleaded guilty to both assault charges. His standard-range sentence for the first degree assault was 102 to 136 months. The third degree assault had a standard range of 3 to 8 months.

At sentencing, the State asked the court to impose 120 months. Susnios requested an exceptional sentence below the standard range of 60 months. He asked the court to consider the effect of implicit racial bias, raising concerns that because he is Black, he would receive a longer sentence than a white defendant would in his position. He then argued that his mental illness and his youth were mitigating factors that warranted an exceptional sentence as they significantly impaired his capacity to appreciate the wrongfulness of his conduct. In support of his argument, Susnios submitted a psychological report detailing his mental health history.

The court first addressed Susnios' concern about implicit racial bias. It noted that "when anybody appears in front of me I try as best I can to handle the

2

case appropriately, not taking into consideration the color of somebody's skin." The court then stated:

> I'd say if anything my sentences probably have been more lenient for people of color than perhaps other people might think they should be because I understand there could be the biases and I take that into account.

The court denied Susnios' request for an exceptional sentence downward. It determined that neither Susnios' mental health nor his youth amounted to mitigating factors. The court imposed a 102-month sentence with a 60-month mandatory minimum term of confinement for first degree assault and a concurrent 8-month sentence for third degree assault. The court found Susnios indigent and waived discretionary fees.

Susnios appeals.

ANALYSIS

Comment on Race

Susnios claims the trial court improperly considered race at sentencing, "demonstrat[ing] bias" and violating his constitutional right to equal protection and the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW. We disagree.

The federal constitution prohibits states from making or enforcing any law that denies "to any person within its jurisdiction the equal protection of the laws." U.S. CONST., amend. XIV, § 1. Similarly situated persons should receive like treatment under the law. State v. Osman, 126 Wn. App. 575, 581-82, 108 P.3d 1287 (2005), aff'd, 157 Wn.2d 474, 139 P.3d 334 (2006). As a result, courts must not impose sentences based on a defendant's race. Buck v. Davis, __ U.S. __, 137 S. Ct. 759, 778, 197 L. Ed. 2d 1 (2017). "Relying on race to impose a criminal

sanction 'poisons public confidence' in the judicial process" and "injures not just the defendant, but 'the law as an institution, . . . the community at large, and . . . the democratic ideal reflected in the processes of our courts.' " Buck, 137 S. Ct. at 778[1] (quoting Davis v. Ayala, 576 U.S. 257, 285, 135 S. Ct. 2187, 192 L. Ed. 2d 323 (2015); Rose v. Mitchell, 443 U.S. 545, 556, 99 S. Ct. 2993, 61 L. Ed. 2d 739 (1979)). There is no compelling governmental interest in enforcing criminal laws based on race, and doing so violates equal protection. McCleskey v. Kemp, 481 U.S. 279, 291 n.8, 107 S. Ct. 1756, 95 L. Ed. 2d 262 (1987).

Similarly, a defendant's race " 'must not enter into the selection of the appropriate sentence' " under the SRA. Osman, 126 Wn. App. at 580 (quoting State v. Roberts, 77 Wn. App. 678, 683, 894 P.2d 1340 (1995)). Courts must apply the SRA "without discrimination as to any element that does not relate to the crime or the previous record of the defendant." RCW 9.94A.340. But neither equal protection nor the SRA prohibits courts from recognizing bias at an individual or systemic level. See State v. Scabbyrobe, 16 Wn. App. 2d 870, 878 n.3, 482 P.3d 301, review denied, 197 Wn.2d 1024, 492 P.3d 174 (2021) ("Implicit bias exists. Law enforcement, prosecutors, trial judges and appellate judges must be aware of this and guard against it."); State v. Gregory, 192 Wn.2d 1, 22, 427 P.3d 621 (2018) (taking "judicial notice of implicit and overt racial bias against [B]lack defendants in this state" in considering whether death penalty unconstitutional).

---

[1] Alterations in original.

Susnios argues that the trial court's discussion of race at sentencing " 'casts doubt' "[2] on his sentence and shows that the judge imposes "more lenient sentences for people of color in order to 'account' for . . . his own biases." He cites two per curiam opinions, State v. Black, No. 71368-0-I (Wash. Ct. App. Dec. 8, 2014) (unpublished), https://www.courts.wa.gov/opinions/pdf/713680.pdf, and State v. Richwine, No. 76807-7-I (Wash. Ct. App. Dec. 18, 2017) (unpublished), https://www.courts.wa.gov/opinions/pdf/768077.pdf, in support of his argument.[3] In each of those cases, the State conceded error because the court discussed perceived inequities in sentencing recommendations for different races and appeared to base its sentence on each defendant's race. Black, No. 71368-0-I, slip op. at 1; Richwine, No. 76807-7-I, slip op. at 2.

Unlike in Black and Richwine, the court here did not impose a sentence based on Susnios' race. Rather, the judge responded to defense counsel's concerns about implicit bias by assuring Susnios that "I understand there could be the biases and I take that into account," and that "when anybody appears in front of me I try as best I can to handle the case appropriately, not taking into consideration the color of somebody's skin." And nothing in the record supports Susnios' argument that the court's comment, "[M]y sentences probably have been more lenient for people of color," shows that it imposed a more lenient sentence in his case. Indeed, the court ultimately rejected Susnios' request for an exceptional sentence downward in favor of a sentence within the standard range.

---

[2] Quoting Powers v. Ohio, 499 U.S. 400, 411, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991).

[3] "Unpublished opinions of the Court of Appeals have no precedential value and are not binding," but cases filed after March 1, 2013 "may be accorded such persuasive value as the court deems appropriate." GR 14.1(a).

Susnios fails to show that the court sentenced him based on race in violation of equal protection or the SRA.

Exceptional Sentence Request

Susnios argues that the court refused to consider meaningfully his request for an exceptional sentence below the standard range. We disagree.

Under the SRA, a trial court must impose a sentence within the standard range "unless it finds substantial and compelling reasons to justify a departure." State v. Smith, 82 Wn. App. 153, 160-61, 916 P.2d 960 (1996). A sentencing court "may impose an exceptional sentence below the standard range if it finds that mitigating circumstances are established by a preponderance of the evidence." RCW 9.94A.535(1). It is a mitigating circumstance if a defendant's "capacity to appreciate the wrongfulness of his or her conduct, or to conform his or her conduct to the requirements of the law, was significantly impaired." RCW 9.94A.535(1)(e).

When a defendant requests an exceptional sentence, our "review is limited to circumstances where the court has refused to exercise discretion at all or has relied on an impermissible basis for refusing to impose an exceptional sentence below the standard range." State v. Garcia-Martinez, 88 Wn. App. 322, 330, 944 P.2d 1104 (1997). "A court refuses to exercise its discretion if it refuses categorically" to impose a sentence "below the standard range under any circumstances." Id. But a court that considered the facts of a case and found no basis for an exceptional sentence exercised its discretion, and the defendant may not appeal that ruling. Id.

6

Susnios claims that the court did not meaningfully consider whether his youth and mental illness significantly impaired his capacity to appreciate the wrongfulness of his conduct when he assaulted Officers Corson and Greely. According to Susnios, the court refused to consider his request for an exceptional sentence, telling him that "I'm not evaluating that today" and that his request was "too complex."  But Susnios mischaracterizes the record.

At sentencing, Susnios argued that his mental illness and youth significantly impaired his capacity to appreciate the wrongfulness of his conduct.  In support of his mental health argument, Susnios offered a psychological report detailing his mental health history.  The court considered the report but rejected it as an adequate legal basis to support an exceptional sentence below the standard range.  The court explained:

> I can't find what's required under the law that it's been proved by a preponderance that there's a connection between that mental health condition and significant impairment of your ability at that time to appreciate the wrongfulness of your conduct or to conform your conduct to the requirements of the law.  I don't believe that the report, although your attorney's done a good job arguing for it, I don't believe that legally I can make the finding that that's established by a preponderance of the evidence.

The trial court also considered and rejected Susnios' argument that his youth significantly impaired his capacity to appreciate the wrongfulness of his conduct.  It concluded there was no sufficient basis for it to find Susnios' age impacted his behavior:

> This is not impulsive behavior that is done by a child. . . . [Y]ou were 25 years old at the time.[4]  I don't disagree that that's a factor that

---

[4] Susnios' counsel, and later the court, inaccurately described Susnios as 25 years old at the time of the assaults.  He was 24.

7

can be taken into consideration. I just don't find that this is the type of behavior consistent with somebody's youthfulness which created the behavior, especially given the facts here that you're saying you don't even remember what happened on that day or how it happened because of your claim that it's related to your mental illness.

The record shows that the court considered Susnios' arguments, concluded they did not support an exceptional sentence, and exercised its discretion to deny the request.

Mandatory Minimum Sentence

Susnios argues that the court erred by imposing a 60-month mandatory minimum term of confinement for first degree assault and that the error warrants resentencing. The State agrees that the court erred but argues we need only remand to strike the 60-month mandatory minimum provision. We agree with the State.

Not all first degree assault convictions carry a 60-month mandatory minimum term of confinement. See In re Pers. Restraint of Huy Khac Tran, 154 Wn.2d 323, 332, 111 P.3d 1168 (2005) ("If the legislature had intended every violation of the first degree assault statute to result in a five-year mandatory minimum, it would have limited" the statute.). Washington's mandatory minimum sentencing statute provides:

> An offender convicted of the crime of assault in the first degree . . . where the offender used force or means likely to result in death or intended to kill the victim shall be sentenced to a term of total confinement not less than five years.

RCW 9.94A.540(1)(b).

The legislature intended the provision to "increase the punitive requirement for certain assaults that are characterized by unusually (within the world of assault)

violent acts or a particularly sinister intent." Huy Khac Tran, 154 Wn.2d at 329-30. An offender serving a mandatory minimum term is not "eligible for community custody, earned release time, furlough, home detention, partial confinement, work crew, work release, or any other form of early release." RCW 9.94A.540(2). Because mandatory minimum sentences increase the penalty of a crime, the defendant must admit to the facts supporting the mandatory minimum sentence or a jury must find the facts by special verdict. Alleyne v. United States, 570 U.S. 99, 103, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013).

In his plea to first degree assault, Susnios admitted that he "intended to inflict great bodily harm . . . by using force or means to produce great bodily harm, to wit: a motor vehicle." But he did not admit to facts that he used force or means likely to result in death or that he intended to kill Officer Corson. As a result, we accept the State's concession that the trial court erred in imposing the mandatory minimum term of confinement for first degree assault.

Susnios argues that the court's error warrants a full resentencing. Remand for resentencing is often necessary when a sentence stems from a trial court's erroneous interpretation of or belief about the governing law. State v. McGill, 112 Wn. App. 95, 100, 47 P.3d 173 (2002). For example, we will remand for resentencing if an error affects a defendant's standard range. See State v. Argo, 81 Wn. App. 552, 569, 915 P.2d 1103 (1996) (remand for resentencing unnecessary where miscalculation of offender score did not affect standard range). Or we will remand for resentencing where the court mistakenly believed it could not impose an exceptional sentence downward. See State v. Hale, 65 Wn.

App. 752, 757-58, 829 P.2d 802 (1992). But we need not remand for resentencing when we are confident that the trial court would impose the same sentence without the error. McGill, 112 Wn. App. at 100.

Here, the court's error did not affect Susnios' standard sentencing range for first degree assault. His standard range of 102 to 136 months remains the same, and the court sentenced him to the lowest sentence possible in that standard range. Nor did the court mistakenly believe the mandatory minimum term of confinement restricted its ability to impose an exceptional sentence downward. Susnios requested an exceptional sentence of 60 months—the same as the mandatory minimum. The court rejected his request for reasons unrelated to its mistaken belief that the mandatory minimum penalty applied.

We are confident that the trial court would impose the same sentence without the error. But because the mandatory minimum term of confinement affects Susnios' eligibility for early release, we remand with instructions to strike the provision from his judgment and sentence.[5]

Supervision Fees

Susnios argues that the court erred by imposing community custody supervision fees in his judgment and sentence. The State concedes the court should strike those fees. We agree.

---

[5] Susnios argues State v. Rusev, No. 47762-9-II (Wash. Ct. App. Apr. 18, 2017) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2047762-9-II%20Unpublished% 20Opinion.pdf, compels us to reach a different result. In that unpublished opinion, Division Two remanded for a full resentencing after determining that the trial court erred in imposing a mandatory minimum sentence because "the trial court may have imposed a different sentence knowing assault in the first degree did not have a mandatory minimum." Rusev, No. 47762-9-II, slip op. at 13. But the record here does not support the same determination.

At sentencing, the court found Susnios indigent and waived financial obligations other than the mandatory victim penalty and biological sample assessments. Still, Susnios' judgment and sentence orders he "pay supervision fees as determined by" the Department of Corrections. Because the record shows that the trial court intended to waive those fees, we remand for the court to strike the supervision fees from Susnios' judgment and sentence. See State v. Bowman, 198 Wn.2d 609, 629, 498 P.3d 478 (2021) (when trial court intends to impose only mandatory legal financial obligations, community custody supervision fee should be stricken as procedural error).

The record does not support Susnios' claim that the trial court improperly considered race in determining his sentence or failed to consider meaningfully his youth and mental health as mitigating factors. However, we remand for the court to strike the 60-month mandatory minimum term of confinement and supervision fees from Susnios' judgment and sentence.

Brennan, J.

WE CONCUR:

Chung, J.                    Andrus, C.J.

11