**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

STATE OF WASHINGTON,

        Respondent,

        v.

M.W.,

        Appellant.

No. 85908-1-I

DIVISION ONE

UNPUBLISHED OPINION

BIRK, J. — A fire at a residential property destroyed several structures and made nearly all of the owner's personal property unsalvageable. M.W. pleaded guilty to first degree reckless burning for his role in starting the fire. Following several continuances past the 180 day deadline for the restitution hearing, the trial court ordered M.W. to pay over $1 million in restitution. M.W. challenges the timeliness of the hearing and the evidence relied on for the restitution order. Because the trial court had good cause to continue the restitution hearing based on the extent of the damage and difficulty for the owner to gather evidence of his losses and there was sufficient evidence of the value of those losses, we affirm.

I

According to the affidavit of probable cause, on July 5, 2021, a fire occurred in Battle Ground, WA, involving a structure locally known as the "Old Cherry Grove Church," two dwellings, and a storage structure, all located on the same property.

The property is owned by Steven Slocum. The damage resulted in a total loss of the structures and their contents.

Within two months after the fire, the investigating officer obtained recorded verbal and handwritten statements from five juveniles, including M.W., who came forward and admitted involvement in throwing a "mortar type firework" at Slocum's property. M.W. stated he exited a vehicle and ignited and threw a "mortar type firework" at the property.

The State charged M.W. with first degree arson. On January 5, 2022, the State charged M.W. by amended information with first degree reckless burning, to which M.W. pleaded guilty on the same day. M.W.'s statement on plea of guilty provides as follows:

> I [M.W.], in the County of Clark, State of Washington, on or about July 5, 2021 together and with others, did recklessly damage a building or other structure or any vehicle by knowingly causing a fire or explosion, to wit: Structures located at 24209 NE 92nd Ave., Battle Ground, WA.
>
> . . . .
>
> [M.W.] agrees to pay restitution in full to all victims on charged counts, including dismissed counts and causes. [M.W.] understands that the agreed upon amount may represent only a portion of the restitution sought in this case and that additional restitution may be requested by the State at a later date.

On July 5, 2022, the State moved to extend the time for the restitution hearing because "[the restitution information] took a while [for Slocum] to compile" due to the "fairly substantial restitution request in this case." M.W. opposed the extension, arguing Slocum failed to provide any proof of restitution to the State within the mandatory 180 day timeframe contemplated by the relevant statute. The

trial court found that there was good cause to continue the hearing because there appeared to be a potentially complete loss of property and because of Slocum's emotional state. The court entered an order extending the restitution deadline to August 4, 2022 and a separate order setting a contested restitution hearing for August 3, 2022.

At the August 3, 2022 hearing, the parties agreed to set the restitution hearing over to allow M.W. more time to "continue investigation" and "review the complex insurance information and documents that have been provided." The trial court confirmed that M.W. waived a speedy restitution hearing and set the new restitution hearing date to September 28, 2022. M.W. stated he did not waive his original objection.

At the restitution hearing on September 28, 2022, the trial court took testimony from Slocum and admitted exhibits into the record. Slocum testified his property included a former church and his home, a parsonage house, and three separate buildings for classrooms, and carports. Slocum purchased the property because it had ample storage space, he was "kind of a hoarder," he had "a lot of stuff," and "this was an ideal place to have it." Slocum decorated the church with "a lot of antiques" and completed "repairs and upgrades." His collection included "[a] lot of phonographs, old victrolas and Edison cylinder players and musical— musical things." Slocum also bought a "couple of pianos, player pianos and a lot of slot machines." Slocum kept several items of family sentimental value in his home, such as furniture pieces, photographs, his mother's jewelry box and purse, his father's TV shop's test equipment, and an Aga cookstove. From his former

3

career as a professional photographer, Slocum accumulated all of his clips, including negatives and digital files. The front of the property included "the mannequin show," where Slocum displayed several mannequins in various clothes and poses. Vehicles on the property included a Silverado pickup, Bravada truck, his sister's Miata vehicle, a vintage camp trailer, a teardrop trailer, a Honda CX 500 motorcycle, and a golf cart.

Slocum and his nephew were in the back of the church on July 5, 2021, when the fire started. Slocum called 911 and was unable to extinguish the fire using a fire extinguisher. While on the phone with emergency dispatchers, he started taking pictures. The court admitted several photographs into evidence, including ones Slocum took during the fire and after the fire documenting the damage. They showed a fulsome collection of personal property from before the fire and grossly complete destruction of the premises afterwards. Slocum could not salvage any of the personal property stored in his home. He testified his mother's Aga cookstove could be replaced for $25,000.00. He did not think he could salvage either his Silverado or motorcycle.

State Farm prepared an estimate to rebuild the structures for $999,354.74. State Farm paid $569,255.85 for the damage to the buildings and Geico paid $7,000.00 for the truck. The remaining vehicles were not covered by insurance. Using the Kelley Blue Book,[1] Slocum estimated his teardrop trailer to be worth $2,500.00. Slocum estimated the replacement cost for his motorcycle to be

---

[1] Kelley Blue Book is a website that publishes market value prices for new and used cars of all types. https://www.kbb.com/.

4

$3,500.00. Slocum's testified he had insurance coverage for $165,000.00 for his personal property, but estimated its total value to be close to $1,000,000.00.

Slocum spoke about his difficulties in completing the personal property inventory. He characterized the process of providing information about his lost personal property as an "absolute nightmare," especially "when I don't have pictures." At the end of the hearing, the trial court entered an order extending the restitution deadline to October 7, 2022 to give the court enough time to consider its decision.

At the presentation hearing, the trial court found that on close to an acre of land, there stood a church, a main dwelling, an accessory dwelling, and a storage structure. Personal items and vehicles were kept on the property. The court ordered restitution of $999,354.74, the total replacement cost of the property's structures established by the State Farm structural damage claim estimate. The court denied Slocum's $15,000.00 "infrastructure" request. The court ordered $7,700.00 for the Silverado, $3,500.00 for the motorcycle, $2,500.00 for the teardrop trailer, and $165,000.00 for Slocum's personal property. The restitution totaled $1,178,054.74. M.W. appeals.

II

M.W. argues there was not good cause to extend the restitution hearing deadline and therefore the court could not lawfully enter a restitution order and the order entered is void. We disagree.

Before entering a dispositional order as to a respondent, the court must hold a disposition hearing to determine the amount of restitution owing to the victim or

5

set a hearing for a later date not to exceed 180 days from the date of the disposition hearing to determine the amount. RCW 13.40.150(3)(f). The court may continue the hearing beyond 180 days for good cause. Id. The parties agree this court reviews an order continuing a restitution hearing for abuse of discretion. See State v. Prado, 144 Wn. App. 227, 249, 181 P.3d 901 (2008); State v. Roberts, 77 Wn. App. 678, 685, 894 P. 2d 1340 (1995). A trial court abuses its discretion if its restitution order is not authorized by statute. State v. Kerow, 192 Wn. App. 843, 846, 368 P.3d 260 (2016).

Courts in other contexts have construed "good cause" to require a showing of some external impediment that did not result from a self-created hardship that would prevent a party from complying with statutory requirements. See State v. Johnson, 96 Wn. App. 813, 817, 981 P.2d 25 (1999) (citing cases). Facts that are applicable to a request for a continuance of sentencing include the length of the delay, the reason for delay, the defendant's assertion of his or her right to speedy sentencing, and the extent of prejudice to the defendant. State v. Tetreault, 99 Wn. App. 435, 438, 998 P.2d 330 (2000).

On appeal, M.W. agrees that July 5, 2022 was last day in the 180 day period. The complexity of assessing the loss to the property's structures cannot be a basis to find good cause to extend time for the restitution hearing because State Farm completed its estimate on October 22, 2021. This was well in advance of the original 180 day limit. However, the time needed to inventory Slocum's personal property and Slocum's emotional state supported good cause to continue the hearing. Slocum testified about maintaining and continuously adding to a vast

collection of personal effects, such as old music equipment, a record of his photographs from his professional career, and items formerly owned by his parents. That he could not salvage anything from his destroyed home also speaks to the difficulty in cataloging and estimating his personal property losses within 180 days after the disposition hearing. The trial court did not abuse its discretion in finding there was good cause to extend time for the restitution hearing.

III

M.W. argues there was insufficient evidence of the value of the items ordered as restitution. We disagree.

Restitution must be limited to easily ascertainable damages for, relevant here, injury to or loss of property. RCW 13.40.020(27). Where the offender has contractually undertaken to pay restitution pursuant to a plea agreement, the offender is bound by the terms of the agreement. State v. Mollichi, 132 Wn.2d 80, 92, 936 P.2d 408 (1997). We review challenges to a restitution order for abuse of discretion. State v. Grantham, 174 Wn. App. 399, 403, 299 P.3d 21 (2013). A trial court abuses its discretion when its decision is manifestly unreasonable, based on untenable grounds, or based on untenable reasons. State v. Dye, 178 Wn.2d 541, 548, 309 P.3d 1192 (2013).

When disputed, the facts supporting a restitution award must be proved by a preponderance of the evidence. State v. Deskins, 180 Wn.2d 68, 82, 322 P.3d 780 (2014). "While the claimed loss 'need not be established with specific accuracy,' it must be supported by 'substantial credible evidence.' " State v. Griffith, 164 Wn.2d 960, 965, 195 P.3d 506 (2008) (quoting State v. Fleming, 75

7

Wn. App. 270, 274-75, 877 P.2d 243 (1994), overruled on other grounds by Washington v. Recuenco, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006)). Evidence supporting restitution is sufficient if it affords a reasonable basis for estimating loss and does not subject the trier of fact to mere speculation or conjecture. State v. Lohr, 130 Wn. App. 904, 910, 125 P.3d 977 (2005). Courts may rely on a broad range of evidence—including hearsay—because the rules of evidence do not apply to sentencing hearings. Deskins, 180 Wn.2d at 83. Evidence presented at restitution hearings, however, must meet due process requirements, such as providing the defendant with an opportunity to refute the evidence presented, and being reasonably reliable. State v. Kisor, 68 Wn. App. 610, 620, 844 P.2d 1038 (1993). A trial court wields discretion to determine the amount of restitution. Id. at 619.

In Kisor, the trial court limited evidence in a restitution hearing to affidavits and the only affidavit submitted was that of a risk manager for Clark County. Id. at 613-14. The risk manager valued the county's loss of a police dog, which was shot and killed, at $17,380, which the trial court ultimately ordered the defendant to pay in restitution. Id. at 612-14. The affidavit broke down the total figure into replacement of animal, room and board, and deputy wages for 12 weeks. Id. at 614 n.2. The court noted the affidavit appeared to be nothing more than a rough estimate of the costs associated with purchasing a new animal and training it. Id. at 620. Other than the risk manager's statement that she "checked" with the Tacoma police and Spokane Canine Training Unit, there is no indication of where she obtained the figures listed. Id. The court reversed the restitution order and

remanded for a new restitution hearing, deeming the affidavit not substantial credible evidence of the restitution figure set by the court and holding due process was offended by the trial court's reliance on the State's affidavit.  Id.

Kisor is distinguishable.  Rather than relying solely on affidavits submitted by the parties, the trial court here presided over a full restitution hearing, admitting 29 exhibits and taking testimony from Slocum.  M.W. conducted extensive cross-examination on the estimates Slocum provided as to his personal property.  State Farm's structure estimate is "priced based on estimated market pricing for the cost of materials, labor, and other factors at the time of the loss."  Spanning nearly 100 pages, the estimate charts a detailed price breakdown of the general contractor's overhead and profit, depreciation, age, life and condition, replacement cost value, actual cost value, sales tax value, and depreciation of over 600 items that comprised the property's structures.  State Farm's estimate constitutes substantial credible evidence to support the trial court's ordered restitution amount of $999,354.74 for the property's structures.

M.W. attempts to discredit the trial court's reliance on State Farm's estimate in two other ways.  First, M.W. cites on appeal to property assessor information that apparently estimated the market value of Slocum's property in January 2022 at $9,002.00 and land value to be $226,977.00.  M.W. argues, "It seems unlikely that the property would appreciate over 400% in that timeframe when Slocum did not describe any major capital improvements during his ownership period."  We do not accept evidence on appeal that was not before the trial court.  State v. Curtiss,

9

161 Wn. App. 673, 703, 250 P.3d 496 (2011) (citing RAP 9.11). We decline to review the property assessor information.

Second, M.W. argues for the first time in his reply brief that State Farm's estimate does not make sense because "[a]t one point it estimated Slocum's loss at $626,185.64 and indicated it issued him a check for $349,831.85. But at another point, it estimated loss as $999,354.74 and indicated it issued him a check for $569,255.85." We note that this argument appears to misread the State Farm documents, which separate the repair costs for the church structure and the dwelling structure, and plainly indicate a replacement cost of $999,354.74 for the two. Nevertheless, an issue raised and argued for the first time in a reply brief is too late to warrant consideration. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992); RAP 10.3. Accordingly, we decline to address this argument.

M.W. does not specifically challenge the remaining amount ordered for Slocum's personal property. To the extent M.W. can be said to challenge this amount on appeal, M.W.'s challenge is based on the argument that Sloucum's testimony was "not credible in light of his request for almost one million dollars for his various aged musical machines, mannequins, and gumball machines that are not documented to have any real pecuniary value." The superior court relied on the clearly established fact that Slocum experienced extensive and nearly complete loss of his personal property, together with the amount for which he had insured it. In the restitution context, once the fact of damage is established, the precise amount need not be shown with mathematical certainty. State v. Tobin,

10

132 Wn. App. 161, 173, 130 P.3d 426 (2006), aff'd, 161 Wn.2d 517, 166 P.3d 1167 (2007).  Given the extensive nature of the personal property loss, the amount for which Slocum had insured it provided a reasonable basis for estimating that he had suffered loss in at least that amount.

The trial court did not abuse its discretion in setting the total restitution amount.

Affirmed.

_____
Birk, J.

WE CONCUR:

_____          _____
Díaz, J.                                                      Bremmer, J